### A. H. Love, Adm'r, v. A. M. Wyatt, Adm'r.

Where the charge of the Court submits issues to the jury, which are not raised by the pleadings or evidence, and it is not clear that the jury were not mis- led thereby, the judgment will be reversed.

Whether the administrator of a fraudulent vendor, representing creditors, can impeach the deed or conveyance of his intestate, on the ground that it was fraudulent as to creditors, under any circumstances, it is not necessary to inquire.

Appeal from Rusk. Tried below before the Hon. William W. Morris.

Suit by appellee, administrator of Robert Woodall, against John Woodall, to recover a slave named Moses.

An amended petition alleged that the estate of said Robert Woodall, deceased, is largely indebted to James A. S. Parsons and many other persons residing in the States of Texas and Arkansas, insomuch that the same is wholly insufficient to pay

them, and will be hopelessly insolvent without said negro slave Moses shall be adjudged to belong to said estate, and be held as assets in his hands to pay said debts.  And plaintiff also alleges that many if not all of said debts were contracted by the said Robert Woodall in his life-time upon the faith of said negro man Moses, those persons who creditd him believing said slave to be the property of the said Robert, for which belief they had good grounds.

Defendant denied all and singular, and alleged that the slave was his own property.  It was proved by the plaintiff, that Robert Woodall, plaintiff's intestate, who was the son of the defendant, had the slave in his possession in Arkansas from 1845 to 1849, as his own property, when, as witness stated, said intestate left Arkansas, having to run away from that State for debt.  The defendant, had removed to Texas in 1845 ; and Robert Woodall, when he left Arkansas, came to Texas, to where his father resided, bringing the slave Moses with him.  Plaintiff's witnesses also proved that said slave continued in the possession of Robert Woodall, the son, and was in his possession at the time of his death in the Fall of 1852.

The defendant gave in evidence a promise in writing, signed by Robert Woodall, dated January 1st, 1851, to pay John Woodall or bearer the sum of fifty dollars for the hire of a negro man named Moses ; the boy to have two suits of clothes and his taxes paid.  It was proved by evidence of hand-writing.  Defendants witnesses proved that Robert Woodall had been heard to say in Arkansas and also in Texas, that the boy Moses belonged to his father, the defendant.  And one witness testified that the slave was for a time, in 1850, in the father's possession ; but it appeared on cross-examination, that the son was at that time staying with his father.  Another witness testified that the defendant was in the habit of letting his children have the use of his slaves when he pleased, and taking them back when he pleased.

This is the substance of all the testimony. The Court charged the jury as follows :

The possession by Robert Woodall of the slave in question at the time of his death, is *prima facie* proof of title in him, and must prevail as to ownership unless overturned by proof.

Although Robert Woodall was the owner of the slave, yet if he, for the purpose of hindering or delaying his creditors, and screening the slave from the payment of his just debts, conferred on John Woodall the absolute. title to him, the plaintiff is not entitled to recover.

Whether this has been made out to your satisfaction is a question of fact for your determination.

If you find that Robert Woodall did not fraudulently confer title on John Woodall as above, and died the owner and possessor of the slave, the plaintiff is entitled to recover.

Again, if you find that John and Robert Woodall, colluded together for the purpose of fraudulently screening the slave Moses from the debts of Robert Woodall, and Bobert Woodall, in pursuance thereof, died in possession of the slave, his administrator, the plaintiff, is entitled to recover.

At the request of plaintiff's attorney, the Court then gave the following additional charge to the jury, viz :

The plaintiff asks the Court to charge the jury that the possession of the slave, Moses by Robert Woodall, from the year 1845, to the Fall of the year 1852, exercising acts of ownership over him, such as hiring him, receiving the hire, and claiming him as his own, and the possession of said slave by said Robert at his death, are such circumstances as raise a presumption of title and ownership of the slave in the said Robert; and to entitle the defendant, John Woodall, to a recovery in this case, he must show by clear and unmistakable testimony, that at the death of the said Robert, he, the said John Woodall, had the actual title to said slave, and that nothing less than actual title in said John will override and defeat such presumptive title in the said Robert.

The defendant's counsel then asked the Court to give to the jury the following charge :

The defendant asks the Court to charge the jury, that if they believe from the testimony that Robert C. Woodall got possession of the slave in question from John Woodall, and that the said slave was only loaned or hired by John to his son Robert, then they must find for the defendant.

Defendant asks the Court to charge the jury that the admissions of Robert Woodall to show that the boy Moses was the property of John Woodall, would be good against the administrator and heirs of Robert Woodall, if the jury are satisfied there were such admissions ; which the Court gave with this additional charge verbally, viz: " that in looking to said " charge asked by the defendant, the jury must consider it in " connection with, and as qualified by, the charge given in " chief by the Court, and also in connection with the charge " asked by plaintiff and given by the Court as above stated."

Verdict and judgment for plaintiff ; motion for new trial overruled, &c. The defendant died during the pendency of the suit, and A. H. Love, his administrator, was made a party.

*Henderson & Jones*, for appellant, cited 11 Tex. R. 556-61; Hart. Dig. Art. 1452 ; 7 Tex. R. 460 ; 15 Id. 223.

*J. R. Armstrong*, for appellee, cited Math. Pre. Ev. 30 ; 1 Ves. 360 ; 1 At. R. 168 ; 7 Term R. 234 ; 13 Ves. 122.

WHEELER, J. This is not a case of conflicting testimony. The evidence going to the question of title was all one way. True, the possession of the plaintiff's intestate, at the time of his death, creates the presumption of ownership ; and it devolved on the defendant to rebut that presumption by proof of title in himself. There was no conflict in the evidence on the question of title. Whether it was sufficient to overcome the presumption arising from possession, and to satisfy the

jury that the title really was in the defendant, was a question for their decision ; it was the only question for them to decide upon the evidence.    And if the charge of the Court had fairly submitted and left that question to their decision, without diverting their minds to other inquiries foreign to the evidence, and calculated to mislead, we might have hesitated to hold that it was error to refuse to set aside the verdict.    But the charge made the case turn on the question whether the plaintiff's intestate had clothed the defendant with the absolute title to the slave for the purpose of hindering or delaying creditors, or screening the slave from the payment of his debts, or whether the intestate and the defendant had fraudulently colluded together, in that matter, to defraud creditors, when there was no such issue made by the pleadings, nor any evidence to warrant the submitting of such a question to the jury. The proof did not show that there were any creditors to be affected by the supposed fraud, or that the estate was in debt. It was averred in the amended petition, but the averment was wholly unsupported by evidence.    It is true, a witness stated that the deceased ran away from Arkansas for debt.  But that is quite too loose and indefinite a statement to be sufficient, of itself, to establish the fact of any existing creditors, or any subsisting indebtedness at the time of his death, or at the time to which the evidence of title related .    Whether the administrator of a fraudulent vendor, representing creditors, can impeach the deed or conveyance of his intestate, on the ground that it was fraudulent as to creditors, under any circumstances, it is not necessary to inquire.    The evidence did not present that question ; nor did it warrant the Court in submitting to the jury the question of a fraudulent conveyance, or a collusion to defraud creditors.    The charge therefore was erroneous, being calculated to mislead the jury ; for which the judgment must be reversed and the cause remanded.

Reversed and remanded.