## RALPH A. PIDCOCK, RESPONDENT, v. UNION PACIFIC RAILWAY COMPANY, APPELLANT.

MASTER AND SERVANT—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.—Plaintiff, acting as switchman of defendant, under the direction of his foreman, was moving flat cars in the yard, and as train was moving at rate of eight or ten miles an hour was directed to throw open a switch; in doing so, he went back to the rear of the car, got down upon a step, and stood with one foot resting on some part of the truck. While in that position the switch-stand, which was nine or ten inches from the track, struck him and knocked him off, and he sustained injuries. One of defendant's rules stated that no building would be allowed nearer than six feet to the main track, and five feet to any side track. Plaintiff knew of this rule, but did not know of the switch stand. *Held,* that the question of negligence and contributory negligence, were properly left to the jury, and their finding would not be disturbed.

ID.—ASSUMPTION OF RISK BY SERVANT.—The danger of the switch-stand above was not one of the ordinary risks incident to plaintiff's employment and was not a risk assumed by plaintiff upon entering the defendant's service.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Mr. P. L. Williams,* for appellant.

*Mr. P. H. Emerson,* for respondent.

ZANE, C. J.:

This action was brought to recover damages for injuries suffered by the plaintiff because of defendant's negligence. The plaintiff had been in the employ of the defendant, at the time of the injury, six or seven months, acting as brakeman or switchman in placing cars in the yard, and in making up trains. He had been so acting, during the night, until six or seven days before the injury, and the remaining time during the day. On the 10th day of September, 1886, the plaintiff, under the di-

rection of J. H. Frawley, his foreman, was engaged in moving five flat cars loaded with salt from the main track to house 2 track.  As the train was moving south, at eight or ten miles an hour, plaintiff was directed by Frawley to throw house 2 switch, and catch the cars as they might come down.  In obeying this order, plaintiff passed to the rear and east side of the car on which they were riding, and got down upon a step, and stood with one foot resting on some part of the truck, with his face to the car, and leaning against it, with his arms over the side board, ready to get off on reaching some convenient place.  While in that position, the bulge of the stand of a switch leading to the weighing scale struck him near the hip, and knocked him off.  His left hand went under the wheel, and was so crushed that it became necessary to amputate the arm about half way between the hand and the elbow.  The distance from the bulge of the switch-stand to the side of the car was nine or ten inches.  The defendant's printed rules to govern train-men and others in its employ were given in evidence, with the certificate of the defendant's superintendent that plaintiff had been examined on them.  Of these rules the one hundred and fifty-fifth is as follows:  "No wood, timber, freight, or material of any kind will be allowed within six feet of the main track.  No buildings of any description will be allowed nearer than six feet to the main track, nor nearer than five feet to any side track.  Trees or other obstructions liable to fall on the track must be immediately cut down or removed."  The plaintiff said that he knew of this rule, and expected to find the track clear; that he knew there was a switch-stand there, but did not know, and had never been informed, that it was so near.  The evidence showed that most of the work in the yard was done on the west side, but that sometimes the men rode on the east side.  It did not appear, however, that plaintiff had ridden or gotten off on that side before.  The ground on the west side of the track was level, and the grade was above the level of the ground on the east side; but the switch that the plaintiff was ordered to throw was three or four rods east of the track on which the plaintiff was when the order was given.

The switch-stand had been placed by the defendant about 14 years before. The case was tried by a jury, who found the issues for the plaintiff, and assessed his damages at the sum of $5,000. The defendant entered a motion for a new trial, which was overruled by the court, and judgment was entered on the verdict. From that judgment, and from the order denying a new trial, the defendant appealed. It assigns as error that the evidence was insufficient to authorize the verdict, first, because it did not show negligence causing the injury on the part of the defendant.

The presumption is that switchmen were expected to get down on the east side of the car, because a ladder was placed there for them to get down on, and it was the most convenient place for the plaintiff to get off the car to set the switch that he was directed to throw. It was natural for him to get off at the most convenient point, although it was not as level as it was on the other side of the track. He would hardly be expected to get off on the west side, and wait until the train had passed, in order to throw a switch on the east side. The defendant should have anticipated that switchmen or other persons might deem it convenient to be on the ladder when passing the switch, and without observing or thinking that it was dangerous to be upon it. The officer or agent of the company, whose duty it was to locate switches, ought to have used, as a reasonable man, sufficient forethought to have anticipated danger from a switch-stand within nine or ten inches of the side of a passing car. In the control of dangerous agencies great care should be used with respect to human life and personal safety. It appears from the evidence that the switch-stand erected above the ground, as this one was, was not necessary, and that a ground-switch would have answered every purpose. By forbidding, as it did in rule 155, the placing of any freight, material, or building of any kind within six feet of the main track, and within five feet of any side track, the defendant indicated a belief that any solid object standing alongside of the track, in the form of a switch-stand or otherwise, within six feet of the main track, or within five feet of a side track, was dangerous, and that due care and caution required such pro-

hibition. The jury was authorized to find from the evidence that the switch-stand in question was in dangerous proximity to the track, and that defendant knew it, because it was placed by the defendant where it was about 14 years before the time of the injury, and had been permitted to stand there ever since. Therefore the evidence warranted the jury in finding that defendant was guilty of negligence.

In the case *Railroad Co.* v. *Russell*, 91 Ill., 298, the court held it to be culpable negligence in the railroad company to permit a telegraph pole to stand, for three years, within 18 inches of freight cars passing on a side track, so that a brakeman descending from the top of such a passing car, in the performance of his duty, was thrown from the car by a pole, and killed. In permitting an awning frame to project 18 inches from a station-house, even with and about 18 inches above the inside edge of a car passing, the court held that the company was guilty of negligence. *Railroad Co.* v. *Welch*, 52 Ill., 183. In another case the court held that the company was negligent in permitting a beam of a bridge to be so low as to strike the head of a man standing on the top of a caboose. *Railroad Co.* v. *Irwin*, 16 Pac. Rep., 146. The defendant also claims that plaintiff was guilty of negligence, without which the injury complained of would not have occurred. The plaintiff testified in substance that he knew there was a switch-stand in the vicinity, but had never been informed, and did not know, that it was near enough to the track to strike a person getting down as he was; that he had worked in the yard, in the daytime, seven or eight days; that his attention had never been directed to, nor had he ever noticed, its position with respect to the track; that he knew that he was on the main line, and was familiar with rule 155, and understood it to mean that no obstruction should be within six feet of the track. It also appears that there was a number of tracks on the west side, and his work had been done there; that his face was turned towards the west, as it naturally would be, in getting down on the ladder on the east side. Under these circumstances, ought the plaintiff to have

known of the dangerous proximity of the switch-stand to the track? Ought he to have seen the danger, and avoided the injury? It was the duty of another agent of the road to locate switch-stands, and to see that the track was clear, so that brakemen and switchmen could discharge their duties without any unnecessary risk therefrom. We are not prepared to hold that a switchman, with the experience and opportunities of observation that plaintiff possessed, and with such care as prudent switchmen ordinarily exercise, might not have failed to discover the danger to which the plaintiff was exposed. The furthest we can go is to say that reasonable men may honestly differ as to the effect of, the evidence, and disagree as to its sufficiency to show contributory negligence; and, that being so, it was within the province of the jury to decide, and we cannot say that the court below erred in refusing to set aside their finding as to that question.

It is said, however, that the peril was one assumed by the plaintiff on entering the service of defendant. It is true that the company was not liable for the ordinary risks incident to plaintiff's employment, or to such dangers as he might have known and avoided in the use of reasonable diligence. But he did not assume such risks as without fault on his part he might be exposed to by the negligence of the defendant. In the case of *Hullehan* v. *Railroad Co.*, 32 N. W. Rep., 529, it appeared the plaintiff, a switchman, struck his toe against a piece of wood allowed to lie along the track, and was thrown down and injured by a car that he was attempting to couple. The court said: "The evidence shows that the plaintiff, when he received the injuries, had only been in the defendant's employ as a brakeman about two weeks; that he knew there was wood scattered along the tracks near the wood-pile on the road, but that he had not noticed that wood was scattered along the track at the place he was injured. . . . His evidence shows that he had a general knowledge of the neglect of the company in keeping its tracks clear about its wood-yards. There is, however, no evidence showing his knowledge of the condition of the track at the place where the injury occurred. This evi-

dence is not conclusive upon the plaintiff that he assumed all risk which arose from such neglect of the company. Even had he known of the existence of the wood lying along the side of the track at the place where he was injured, it would not be conclusive against him. He might have a general knowledge of the defects of the road, but may not have had such knowledge of the dangerous character of such obstructions as to absolutely charge him with the assumption of all risk arising from such obstructions. Notwithstanding his knowledge of the fact of the obstruction, still it was a question for the jury whether he was guilty of negligence in remaining in the employ of the defendant after such knowledge. For this reason, and because there was no evidence that he had knowledge of the particular obstruction which caused the injury, we cannot say that the verdict of the jury upon this question is against the evidence." In the case of *Railroad Co.* v. *Irwin, supra,* the court said: "It is true that he had run over the road, and through the bridge, daily, for three months preceding the accident. He knew of the existence of the bridge, and that it was constructed with overhead timbers; but it does not necessarily follow that he was acquainted with the proximity of the braces to the top of the caboose or cars. When he entered the service of the company, he assumed the ordinary risks incident to the service, and if he enters or continues in the service with a knowledge of the risk or danger, and without objection, he must abide the consequences. . . . The law, however, does not require that an employee shall know of all defects or obstructions that may exist on the road, or in the service in which he is engaged. And it cannot be said that the peril in this case was so obvious and patent that Irwin must have known it. He had a right to assume that the company had done its duty and placed its track in such a condition that he could perform his duties with reasonable safety." To the same effect are *Railroad Co.* v. *Russell, supra; Railroad Co.* v. *Welch, supra,* and *White* v. *Worsted Co.,* 11 N. E. Rep., 75. Inasmuch as our view of the law accords with the cases cited, we will not extend this opinion by adding a consid-

eration of numerous, other cases to which reference was made in the argument of counsel. Other errors are assigned on this record, but we do not find any of them sufficient to authorize a reversal. Therefore we affirm the judgment of the court below.

HENDERSON, J., and BOREMAN, J., concur.