HERMAN BOSS, Plaintiff and Respondent *v.* NORTHERN PACIFIC RAILROAD COMPANY, Defendant and Appellant.

### Injury to Servant—Contributory Negligence—Proximate Cause—Instructions.

1. It is incumbent upon a railroad employe whose duty requires him to ride upon one of the company's trains to ride in such places as the railroad company has provided for that purpose; and, if he is injured while riding in a more dangerous position, the law will presume that his negligence contributed to such injury. But this presumption may be overcome by evidence that such employe occupied such dangerous position through no fault or negligence of his own, and not of his own free will.

2. An employe, upon entering the service of a railroad company, has the right to assume that the railroad and its appurtenances are so constructed as to render him safe in the performance of his duties, and that he will not needlessly be exposed to extraordinary risks of which he has no notice, or of which he is not chargeable with notice.

3. Such employe does not assume the risk arising from the erection and maintenance of a switch stand and target of such height, and in such position and condition, that the target will sometimes come in contact with the sides of the cars of passing trains; particularly when such employe of the company knows that the rules of the company

prohibit the erection of any such switch stand within less than six feet of the track.

4. In an action for damages upon the ground of a neglect of duty on the part of the defendant, it must appear that the neglect of duty was not only the cause, but the proximate cause, of the injury; but, to enable a defendant to shield himself behind an intervening cause, such intervening cause must be one that severs the connection of cause and effect between the negligent act and the injury.

5. Where the negligent act of one responsible party concurs with the negligent act of another responsible party in producing an indivisible injury to a blameless third party, such third party has his right of action against either of the negligent parties.

6. While the statute requires the charge of the trial judge to the jury to be exclusively in writing, yet where a party sits by and hears the trial judge give the jury parol instructions, and fails to object thereto at the time and upon that ground, he is conclusively presumed to have waived the error.

(Opinion Filed July 31, 1891. Re-hearing Denied Aug. 29, 1891.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. McCONNELL, Judge.

*John C. Bullitt, Jr.,* and *Ball & Smith,* for appellant.   *Taylor Crum* and *S. G. Roberts,* for respondent.

Action by Herman Boss against the Northern Pacific Railroad Company for personal injuries.   Verdict and judgment for plaintiff.   Defendant appeals.   Affirmed.

John C. Bullitt, Jr., and Ball & Smith for appellant:

Railroad companies have the unrestricted right to put up structures on their right of way whenever and wherever they see fit, subject only to liability for such injuries as are caused by such structures to employes while engaged in their proper sphere of duty and to passengers while riding in their proper places on the cars.   Gibson v. Railroad Co., 63 N. Y. 449; Randall v. Railroad Co., 109 U. S. 485; Railroad Co. v. Sentmeyer, 37 Am. Rep. 684.   It is not necessary that an employe have actual knowledge of the defective structure or machinery.   Bresnahan v. Railroad Co., 49 Mich. 410.   In the case at bar it ap-

pears that plaintiff had passed this switch stand for fifteen or sixteen days preceding the injury. See Railroad Co. v. Stricker, 51 Md. 47, 34 Am. Rep. 291; Debit v. Railroad Co., 50 Mo. 302; Rains v. Railroad Co., 71 Mo. 164, 36 Am. Rep. 459; Clark v. Railroad Co., 49 Am. Rep. 394; Thompson on Neg., Vol. 2, p. 1008; Railroad Co. v. Austin, 40 Mich. 247. The location and condition of the switch stand in question was not the proximate cause of the injury to plaintiff. Proximate or immediate and direct damages are such as are the ordinary and natural results of the negligence, such as are usual and might have been expected; but does not include such as are the result of an accidental or an unusual combination of circumstances not to be reasonably anticipated and over which the negligent party has no control. Henry v. Railroad Co., 50 Cal. 183; Thompson on Neg., p. 1083, note 1. The defendant is not liable if there was any intervening, efficient cause of injury not put in motion by the defendant. Beach on Contr. Neg., p. 32; Addison on Torts, p. 6; Cooley on Torts, pp. 68-9, Fairbanks v. Kerr, 10 Am. Rep. 664. There must be a natural and probable sequence between the negligent act and the injury and no intervening efficient cause. Fent v. Railroad Co., 57 Ill. 349; Railroad Co. v. Pilke, 5 Dak. 444. On the proposition as to what constitutes contributory negligence appellant cites Whittaker's Smith on Neg., pp. 373, 374, 387; Beach on Contr. Neg., pp. 7, 9, 14, 15, 36; Railroad Co. v. Munger, 5 Denio 255; Railroad Co. v. Gross, 17 Wis. 428; Colgrove v. Railroad Co., 20 N. Y. 492; Simpson v. Keokuk, 34 Iowa 568; Railway Co. v. Smith, 3 S. E. Rep. 397; Railroad Co. v. Monday, 4 S. W. Rep. 782; Baumeester v. Railroad Co., 34 N. W. Rep. 414; Masser v. Railroad Co., 27 N. W. Rep. 776; Scheffer v. Railroad Co., 21 N. W. Rep. 711; May v. Railroad Co., 16 Pac. Rep. 210; Daggett v. Railroad Co., 34 Iowa 284; Mertenson v. Railroad Co. 15 N. W. Rep. 569; Railroad Co. v. Thomas, 79 Ky. 160; Railroad Co. v. Langdon, 92 Pa. St. 21. Where contributory negligence is established, the question becomes one of law and the plaintiff may be nonsuited or a judgment given for the defendant. Railroad Co. v. Houston, 95 U. S. 697; Randall v. Railroad Co., 109 U. S. 485; Schofield v. Railroad Co., 30 Minn. 484; Morrison v. Railroad Co., 59 N. Y. 302.

Taylor Crum for respondent:

The court will presume nothing in favor of the party alleging error. Carman v. Pultz, 21 N. Y. 547; People v. Whiting, 53 Cal. 420; Viele v. Railroad Co., 20 N. Y. 184. The party appealing must show from the facts that the law is necessarily in his favor. Grant v. Morse, 22 N. Y. 324; Ford v. Pearson, 15 Pac. Rep. 535. The party alleging error must show it specifically. Briant v. Trimmer, 47 N. Y. 96; Acker v. Carver, 23 Minn. 567. The presumption of law is that there was evidence to sustain every fact found. Dale v. Anderson, 27 Cal. 250; Lyon v. Lenbeck, 29 Cal. 139. Under the facts of this case, as shown in the statement, there were presented questions of fact for the determination of the jury. Railroad Co. v. Jones, 95 U. S. 441; Bank v. Guttchlick, 14 Pet. 19; Railroad Co. v. Pollard, 22 Wall. 341; Richardson v. Boston, 19 How. 263; Railroad Co. v. Stout, 17 Wall. 657; Dewire v. Railroad Co., 19 N. E. Rep. 523; Torry v. Railroad Co., 18 N. E. Rep. 213; Scanlon v. Railroad Co., 18 N. E. Rep. 209; Pidcock v. Railroad Co., 19 Pac. Rep. 191; Railroad Co. v. Boudron, 37 Am. Rep. 707; Spooner v. Railroad Co., 54 N. Y. 234; Nolan v. Railroad Co., 87 N. Y. 67; Willis v. Railroad Co., 34 N. Y. 675; Clark v. Railroad Co., 36 N. Y. 135; Colgrove v. Railroad Co., 20 N. Y. 492; Sullivan v. Railroad Co., 4 Am. St. Rep. 239; Dobieki v. Sharp, 88 N. Y. 204 ; Werle v. Railroad Co., 98 N. Y. 650; Ginna v. Railroad Co., 67 N. Y. 596; Railroad Co. v. Gregory, 58 Ill. 272; Railroad Co. v. Welch, 52 Ill. 183; Railroad Co. v. Russell, 33 Am. Rep. 54; Spencer v. Railroad Co., 17 Wis. 503; Barton v. Railroad Co., 14 Am. Rep. 418; Railroad Co. v. Pondrom, 2 Am. Rep. 306; Farlow v. Kelley, 108 U. S. 288; Breen v. Railroad Co., 16 N. E. Rep. 60; Dohlberg v. Railroad Co., 21 N. W. Rep. 545; Dickinson v. Railroad Co., 18 N. W. Rep. 553; Robel v. Railroad Co., 27 N. W. Rep. 305; Railroad Co. v. Rowan, 3 N. E. Rep. 629; Railroad Co. v. Irwin, 16 Pac. Rep. 150; Railroad Co. v. Johnson, 4 N. E. Rep. 383; Holden v. Railroad Co., 2 Amer. & Eng. R. Cas. 102; Nugent v. Railroad Co., 38 Id 52. A general verdict having received the sanction of the trial court must be treated as a finding of every thing necessary to sustain the general finding.

Elerick v. Braden, 15 Pac. Rep. 887. Plaintiff's care may be inferred from instincts of self preservation. John v. Railroad Co., 20 N. Y. 65. It was negligence to run defendant's train through the yard at a speed greater than six miles per hour. Corrill v. Railroad Co., 18 Am. Rep. 22 ; Thompson v. Railroad Co., 17 N. E. Rep. 691. As to the crowding on the platform: Railroad Co. v. Cummings, 106 U. S. 700 ; Clark v. Soul, 137 Mass. 380 ; Cone v. Railroad Co., 81 N. Y. 207 ; Cunningham v. Railroad Co., 7 Pac. Rep. 779 ; Cayzier v. Taylor, 10 Gray 274; Booth v. Railroad Co., 73 N. Y. 38.

The opinion of the court was delivered by

BARTHOLOMEW, J.  On the 15th day of December, 1885, plaintiff was in the employ of defendant as a section hand, and was engaged in unloading wood in defendant's yards at Fargo. On that day, and while riding on one of defendant's trains from the round house to the depot—a distance of about one mile— plaintiff was struck by a switch signal, and knocked from the train, and injured. This action was brought to recover damages for such injury. The train on which plaintiff was riding was known as the " Jamestown accommodation." It consisted of an engine, tender, freight caboose car, and an ordinary coach. This caboose car was equipped, as it appears such cars usually are on defendant's road, with a platform and steps at each end, with a door in each end, and side doors in the front part. The front end of this car was being used as a baggage car, and the rear end as a smoking car. The end door in front was habitually locked, but there was no notice or anything to indicate that entrance could not be made at that end. Ordinarily, these cars, when in proper use on freight trains, are not locked at either end. This train regularly made a brief stop at the round house, and passage on the train was free to all parties from the round house to the depot. The section foreman of the gang in which plaintiff worked had directed the men under him who did not bring their dinners with them to ride on this train to the depot in going to dinner, and plaintiff and others of his fellow-workmen had been in the habit of so riding for a number of days. They had, however, been directed by the conductor

and brakemen to ride in the caboose car and not in the coach. On the day of the accident, plaintiff and the others were working about 500 or 600 feet from and north of the point where the train would stop. When the train whistled the men started in a run to reach the point where it would stop. Plaintiff seems to have been in front. He crossed the track to the south side in front of the engine, and passed back until he reached the front steps of the caboose car, where he climbed upon the platform. Access to the train was from the ground on either side. About the same time others of the workmen were getting on the front platform of the caboose from the north side. Plaintiff tried the door in the front end of the car, and found it locked. It does not appear that he made any effort to leave the front platform and get aboard at the rear of the car. The train started almost immediately. One of the section men who went to the rear of the caboose testifies that the train was moving when he got on. There are two parallel tracks from the round house to the depot. This train came in on the south track, but before reaching the depot it was thrown through a switch on the north track. When the train started there were so many of the section hands on the platform that plaintiff was crowded down until he sat upon the second step, with his feet resting on the lower step. As the train was thrown onto the switch he arose to his feet, he says, to enable him to hold on better. As the train passed from the switch onto the north track a sudden lurch of the car threw plaintiff to the south until his head passed the line of the outside of the car, and was struck by the target on the switch stand at that point. When struck, plaintiff was not looking to the east in the direction the train was running, but was looking to the southwest. The train was running at more than double the speed allowed by the rules of the defendant company inside the Fargo yard limits. The switch stand by which plaintiff was injured was about seven feet high, and was located four feet from the track. The target at the top extended nine inches in each direction. When the stand was erect this target would be within eight inches of a passing train. The switch stand was bent, throwing the top still nearer the train, and it had been known to come in contact with pass-

ing cars. The rule of the defendant—with which plaintiff was familiar—required all switch stands of this height to be placed not less than six feet distant from the track. Where a switch stand was required to be erected within less than six feet of the track, a low pattern was used. This switch stand had been in use for two years prior to plaintiff's injury. Defendant's road-master had notified the proper division superintendent, long prior to the injury to plaintiff, that this switch stand was too high and dangerous. Immediately after the injury to plaintiff it was removed, and the low pattern substituted.

There was a general verdict for plaintiff. The facts as recited are either uncontradicted, or supported by such evidence that the jury might fairly find them to exist. There was a motion to take the case from the jury at the close of plaintiff's testimony and repeated when the testimony was all in; but as the same points are preserved and presented under the exceptions to the instructions, and to the refusal of the court to give certain instructions asked, the motion need not be specially noticed. The negligence of defendant would seem to be established too clearly to be seriously questioned. The learned counsel for defendant contend, however, that the facts do not establish any negligence of which this plaintiff can take advantage; that the defendant had the unrestricted right to erect structures on its right of way where and when it pleased, subject only to liabilities for such injuries as might be caused by such structures to employes while engaged in their proper sphere of duty, and to passengers while riding in their proper place in the cars. As a general proposition the contention is correct. Whether at the time of the injury plaintiff be regarded as a passenger or an employe, we think he was lawfully upon the train; that he was not a trespasser. But as the case has been submitted to us on the theory that his rights were only those of an employe, and the duty and liability of the defendant to him were only such as it owed to its employes, and as that view is the more favorable to the defendant, we will accept it, in passing upon the case. The plaintiff was, then, lawfully on the train, in obedience to the orders of his foreman. He had no duty to perform on the train except to ride in such

places on the caboose car as defendant had provided for that purpose. If he failed to do so; if he occupied a more dangerous position—and the steps to a platform would be a more dangerous position—that would raise a presumption of such contributory negligence on his part as would defeat a recovery, admitting the negligence of defendant. To overcome that presumption of contributory negligence, and entitle himself to a recovery, it would be necessary for the plaintiff to establish the fact that he occupied such position through no fault or negligence of his own, and not from choice. On this point the learned trial court fully and correctly charged the jury. If plaintiff succeeded in establishing the facts as above indicated, he would then be in a position to take advantage of defendant's negligence. But it is insisted that plaintiff failed to show that he was not in this dangerous position from choice, because he failed to show that he made any effort to get on board at the rear platform after he found the front door locked. But it was the duty of the jury to consider all the circumstances. It is apparent that it required a vigorous effort on the part of the plaintiff and his fellow workmen to reach the train before it would start. Plaintiff got on board at the first available point. There was nothing to notify him that he could not gain entrance in that way. He had been in the employ of defendant for years, had been accustomed to ride in their freight caboose cars when they were in proper use on freight trains, and knew that both doors were habitually unlocked when the car was in use. He had no knowledge that the front door of this car was kept locked, and only learned that he could not gain entrance when he tried the door. The train was expected to start every moment, and did start almost instantaneously. Plaintiff was compelled to remain on the platform, or take his chances of getting on board from the ground with the train in motion. His only choice was a choice between two dangers; and whether or not, in taking the course he did, he was guilty of any negligence was a question for the jury. We cannot say that they were warranted in finding that plaintiff, at the time he was injured, was on that platform without fault on his part, and not of his own free will.

It is further urged that the risk of his being injured as he was injured was assumed by plaintiff when he entered the employ of defendant. It is beyond legal controversy that the employe, when he enters upon the service, assumes the ordinary risks incident to such service, and also the extraordinary risks of which he has notice, or of which, in the usual exercise of his faculties, he ought to have notice. It is equally well settled that an employe, upon entering the service of a railway company, has the right to assume that the railway and its appurtenances are so constructed as to render him safe in the performance of his duties, and that he will not needlessly be exposed to any extraordinary risk of which he has no notice. Railroad Co. v. Irwin, 37 Kan. 701, 16 Pac. Rep. 146; Railroad Co. v. Rowan, 104 Ind. 88, 3 N. E. Rep. 627; Railroad Co. v. Orman, 49 Tex. 342; Railroad Co. v. Swett, 45 Ill. 197; Railroad Co. v. Russell, 91 Ill. 298. Nor does he assume the risk arising from the erection of a high switch stand and signal so near the track that, at best, it clears the cars but a few inches, particularly when he knows the rules of the company forbid the erection of any such structure in such position. Pidcock v. Railroad Co., 5 Utah 612, 19 Pac. Rep. 191; Scanlon v. Railroad Co., 147 Mass. 484, 18 N. E. Rep. 209; Boss v. Railroad Co., 5 Dak. 308, 40 N. W. Rep. 590. Nor can we say that plaintiff, in the ordinary exercise of his faculties, was bound to know the condition of that switch stand. It is true that he had passed it upon this train nearly every day for two weeks; but he had no duty to perform in connection with the running of the train—nothing in any manner that would be likely to call his attention to the condition of this switch stand. Under such circumstances it would be only natural that he should pass it without notice. We do not see why he should be charged with knowledge of its condition simply because he had passed it, any more than any passenger who had passed it an equal number of times. Railroad Co. v. Irwin, *supra*, and Pidcock v. Railroad Co., *supra*. It is undisputed that plaintiff had no actual knowledge of the existence of this danger. Had he seen it, duty and self-preservation alike would have required him to avoid it, if possible. Had he known of its existence, or had he been chargeable with such

knowledge perhaps it would have been negligence on his part not to have watched for and guarded against it. But it cannot be said, as a matter of law, that plaintiff was negligent in not looking for an object of the existence of which he had no knowledge, and which he had a legal right to presume did not exist. Railroad travel is so rapid that it has frequently been held negligence for a party, while riding in the cars, to voluntarily expose his person beyond the outer line of the car. In this instance, however, the evidence tends to show that plaintiff was thrown to the south and beyond the line of the car by a sudden lurch of the train as it passed through the switch, caused, doubtless, by the improper speed at which the train was running. We cannot say as a matter of law that this exposure was the result of any negligence on plaintiff's part; and we wish to add here that the law on the subject of contributory negligence, so far as it applies to this case, was very fully and fairly stated in the charge of the learned trial court to the jury, and the evidence nowhere discloses a state of facts that would warrant the court in taking that question from the jury.

Appellant insists that its negligence in maintaining the switch stand was not the proximate cause of plaintiff's injury, and that, as the facts were undisputed, the court should have so instructed the jury as a matter of law; and in support of this contention counsel cite West Mahoney Tp. v. Watson, 116 Pa. St. 344, 9 Atl. Rep. 430, and Railroad Co. v. Trich, 117 Pa. St. 390, 11 Atl. Rep. 627. It is claimed, first, that as it appears that plaintiff was crowded down upon the lower step and into a dangerous position by his fellow workmen upon the platform, therefore the superseding or responsible negligence of a third party intervened between the negligent act of defendant and the injury. As to this point, a perusal of the cases cited at once discloses that they are not applicable to the case at bar. In the first case, action was brought against the township to recover the value of a team by reason of the negligence of the township in suffering its highways to become obstructed. An ash heap had been allowed to accumulate in the highway, which overturned plaintiff's sleigh, and the team ran away. After running some distance, they went upon the railroad track, but

were frightened off by a train, and their direction changed.
After running some two miles the other way, they again went
upon the track, and were killed by another engine. The
court very properly held that the accident at the ash heap was
not the proximate cause of the death of the horses. There
was an all-sufficient subsequent intervening cause in that case.
And the case in 117 Pa. St., and 11 Atl. Rep., is similar in prin-
ciple. A street car was stopped to enable a passenger to get on
at the rear platform. Just as the passenger reached the plat-
form, the driver, suddenly and without notice, whipped up his
horses to avoid a runaway team. The sudden start threw the
passenger back on the ground, and she was injured by the run-
away team. The court held that the negligence of the driver
in suddenly starting the car was not the proximate cause of the
injury. In this case, too, there was a subsequent intervening
cause. These cases from Pennsylvania reiterate and confirm the
rule first announced in that court in Railroad Co. v. Kerr, 62
Pa. St. 353, and repeated in Hoag v. Railroad Co., 85 Pa. St.
293, as follows: "The immediate, and not the remote, cause is
to be considered. This maxim is not to be controlled by time
or distance, but by succession of events. The question is,
did the cause alleged produce its effect without another cause
intervening, or was it to operate through or by means of this
intervening cause?" In this case the injury—the hurt—was
caused by the switch stand, and that alone. It is true that if
any one of a great many circumstances that preceded that
injury, including the crowding on the platform, had never oc-
curred, plaintiff would not have been where he was, and would
not have been injured; but no one of these circumstances was
directly or indirectly the cause of the injury. The intervening
cause, to be a shield to defendant, must be such as to actually
break all connection of cause and effect between the negligent
act and the injury. To be a superseding cause it must alone,
and without the slightest aid from the act of defendant, pro-
duce the injury, and to be a responsible cause it must be the cul-
pable act of a responsible party. Shear & R. Neg. §§ 31, 32,
and cases cited. But the direct connection of cause and effect
between the improper switch stand and the injury remains un-

impaired in this case. The utmost latitude that could be given the evidence would only warrant the conclusion that the culpable act of the fellow workmen concurred with the existing, continuing, negligent act of defendant in producing the injury. But the concurrent negligence of the fellow workmen is of no importance. Where the negligent acts of two parties concur in producing an indivisable injury, the injured party has his right of action against either. Pastene v. Adams, 49 Cal. 87; Martin v. Iron Works, 31 Minn. 407, 18 N. W. Rep. 109; Ricker v. Freeman, 50 N. H. 420; Atkinson v. Transportation Co., 60 Wis. 141, 18 N. W. Rep. 764; Railway Co. v. Salmon, 39 N. J. Law, 309.

"The breach of duty on which an action is brought must be not only the cause, but the proximate cause, of the damage to plaintiff." Under this familiar language, it is urged that the breach of duty in this case was not the proximate cause of the injury in the sense that the injury was not one that could have been naturally and reasonably anticipated as a result of such breach of duty. There is not an entire uniformity of holding upon this point. The rule most generally followed, and which we adopt, was announced in Railroad Co. v. Kellogg, 94 U. S. 469, as follows: "But it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been seen in the light of the attending circumstances. These circumstances, in a case like the present, are the strength and direction of the wind, the combustible character of the elevator, its great height, and the proximity and combustible character of the saw mills and piles of lumber." But the argument in this case is that defendant could not reasonably have foreseen or anticipated the circumstances that led up to the injury. We think this is a misconception of the rule. Shear & R. Neg. § 29, thus states the rule: "The practical solution of the question appears to us to be that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all

the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought, at the time of the negligent act, reasonably possible to follow if they had been suggested to his mind." The supreme court of Wisconsin, which fully approves the rule announced in Railroad Co. v. Kellogg, *supra*, say in Atkinson v. Transportation Co., 60 Wis. 141, 18 N. W. Rep. 764: " The circumstances which do in fact exist are to be determined by the jury from all the evidence, and, where they have determined what the circumstances were at the time, then they can with some reasonable degree of certainty determine the question whether the result could reasonably have been expected to occur in the light of such circumstances." As we have said, defendant's negligence was a continuing act. In the light of the circumstances, as the jury was warranted in finding them to exist at the time, the injury was in a high degree probable. The action of the court in refusing to take the question of proximate cause from the jury was entirely correct. What we have already said will obviate the necessity of any detailed consideration of the errors assigned upon the instructions given and refused. The charge of the court, which we deem fair in all respects to the defendant, was substantially in accord with the views here expressed. The instructions asked and refused embodied defendant's views of the propositions we have already discussed. The main charge of the court to the jury was in writing, but the court read the sections of the statutes defining the various degrees of negligence, and made some oral comments to the jury in connection therewith. All that was said by the court was taken down by the stenographer. It does not appear that it was not written out and given to the jury upon their retirement. No exception was taken at the time to the manner of giving the, instructions. The statute (§ 5048, Comp. Laws), requires the instructions to be in writing. At the close of the instructions, counsel agreed in open court " that, at any time within which a stay was granted, either party might take his or its exceptions to the charge, or any part thereof;" and within the life of this stay defendant took exception to the giving of oral instructions, but not to the matter of the instructions so given.

We hold that the agreement could cover exceptions to the matter of the charge only. It is not competent for counsel to sit by and make no objections to oral instructions when given on that ground, and by agreement save their exceptions weeks later. Such a course is not fair to the court, and has the support of no adjudicated case, so far as we know. When counsel so sit by without objection, they must be held to have waived the error. Sack. Instruct. Juries, 14; Garton v. Bank, 34 Mich. 279; State v. Sipult, 17 Iowa, 575; Vanway v. State, 41 Tex. 639. Many errors are alleged upon the rulings of the court in the admission or rejection of testimony. We have examined them all, and consider them not well taken. Their reproduction here would be an unwarranted use of space. The judgment of the district court is in all things affirmed. All concur.

WALLIN, J., having been of counsel, did not sit on the hearing of this case; Judge WINCHESTER, of the Sixth district, sitting by request.