Gayle Jeane **BARTELS, as personal representative of the Estate of John Mark Bartels, Deceased, Appellant,**

v.

**CITY OF WILLISTON, Appellee.**

**No. 79–1941.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1980.

Decided July 10, 1980.

Rehearing and Rehearing En Banc Denied Aug. 11, 1980.

John E. Rowell, Dosland, Dosland & Nordhougen, Moorhead, Minn. (argued), and J. P. Dosland, Moorhead, Minn., on brief, for appellant.

Thomas A. Mayer, Fleck, Mather, Strutz & Mayer, Bismarck, N. D. (argued), and Jane Fleck Romanov, Bismarck, N. D., on brief, for appellee.

Before LAY, Chief Judge, ROSS, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

In this diversity action plaintiff Gayle Jeane Bartels[1] appeals from an Order of the United States District Court, District of North Dakota,[2] denying plaintiff's motion for a new trial, which followed a jury verdict for the defendant City of Williston. At approximately 2:45 a. m. on the morning of March 11, 1977, John Mark Bartels (Bartels), plaintiff's decedent, suffered serious and permanently crippling injuries when the four-wheel-drive jeep in which he was riding plummeted off a drop off in a gravel pit operated by the City of Williston and fell thirty-five feet to the floor of the pit. The City was found by a jury not to be liable for the injuries suffered by Bartels in the accident. Plaintiff-appellant claims that the district court erred in entering

---

* Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation.

1. During the pendency of this appeal, the original plaintiff, John Mark Bartels, passed away. His wife and personal representative of his estate, Gayle Jeane Bartels, has accordingly been substituted to pursue this appeal.

2. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

judgment on what plaintiff claims to be an inconsistent jury verdict, in giving certain instructions to the jury, and in refusing to admit certain evidence at the trial. We affirm.

The gravel pit where the unfortunate accident occurred is located just outside of Williston, North Dakota. The City has leased it from a private individual for several years and has been removing gravel from the pit since the Fall of 1975. During the period that the City has leased the gravel pit, and apparently before that time as well, the gravel pit had been used by private individuals for varying recreational purposes. Among those using the gravel pit were motorcyclists and drivers of other recreational vehicles such as the four-wheel-drive jeep involved in this action. Testimony at the trial indicated that the "trails" created by such recreational activities did change frequently and that abrupt ending of trails due to excavation of gravel by the City was not uncommon. The main entrance to the gravel pit was located on its western edge; two signs stating "Danger—Keep Out" were posted at this entrance by the City. Access to the gravel pit, however, was possible from virtually any spot on the southwest edge of the gravel pit, which lay along the northern boundary of the City.

Just before 2 a. m. on the morning of the accident Bartels and the owner of the jeep, Donald Hackney, were returning from the midnight shift at the oil rig at which they worked when they decided to go "four wheeling" at the gravel pit. The two had been drinking prior to arriving at the gravel pit and the evidence indicated that they were drinking while at the gravel pit as well. The accident occurred as Hackney attempted to drive to the floor of the gravel pit from the top of one of its many hills. According to Hackney's testimony at the trial, as the jeep reached the top of this particular hill, it became hung up or "bottomed out" on a ledge. Rather than getting out of the jeep to check for the cause of the "bottoming out," Hackney testified that he simply gave the jeep more gas. This action sent the jeep off of the precipice of the hill and down to the floor of the

gravel pit. Although Hackney apparently did not suffer serious injuries, Bartels suffered crippling injuries that left him a quadriplegic.

At trial, the plaintiff claimed that the City was negligent in maintaining a dangerous artificial condition at the gravel pit that it knew or from the circumstances should have known would cause danger, death, or serious bodily harm to licensees or trespassers and maintained the premises under such circumstances that licensees or trespassers would not, by reasonable use of their own senses, discover the dangerous condition. Plaintiff also claimed that the City was negligent in failing to exercise reasonable care to warn licensees or trespassers of the condition of the property and of the risks involved in being upon the property and using the same. The jury found that the City had been negligent, but found that the negligence was not the proximate cause of Bartels' injuries.

In this appeal, plaintiff suggests that the jury's verdict was inconsistent, claiming the finding that the City was negligent is inconsistent with the finding that the negligence was not the proximate cause of the injury suffered by the complaining party. See, e. g., Born v. Osendorf, 329 F.2d 669 (8th Cir. 1964). The question of proximate cause is for the jury, see Brauer v. James J. Igoe & Sons Construction, Inc., 186 N.W.2d 459, 468 (N.D. 1971); in this case reasonably prudent people could reach different conclusions as to whether the City's action either in maintaining the gravel pit or warning of any dangerous conditions in the gravel pit were the proximate cause of Bartels' injuries. Under the circumstances of this case, we cannot say as a matter of law that the claimed negligence by the City was the proximate cause of the accident; viewing the evidence in the light most favorable to the defendant and to the verdict of the jury, the jury verdict must stand unless the district court committed an error of law.

In this regard, plaintiff claims that it was error for the district court to instruct the

jury on intervening-superseding cause. The instruction given was as follows:

> If the negligence complained of created a condition which thereafter was acted upon by a subsequent, independent, and unforeseeable act which produces an injury, the original negligence is a remote and not a proximate cause of the injury, even if the injury would not have occurred without it.

If the district court's instruction was improper under the circumstances of this case, then the plaintiff is entitled to a new trial.

■ In defining its law of negligence in 1972, the North Dakota Supreme Court stated:

> To constitute actionable negligence, there must be a causal connection between the negligence and the injury sustained, and for the negligence to be the proximate cause of the injury, the defendant must owe to the plaintiff a duty, and the injury to the plaintiff must have resulted as a direct consequence of the negligent breach of that duty.
>
> *    *    *    *    *    *
>
> Where the negligence complained of only creates a condition which thereafter is acted upon by a subsequent, independent, unforeseeable act, which produces an injury . . . the original negligence is remote and not the proximate cause, even if the injury never would have happened but for the original negligence.

*Moum v. Maercklein*, 201 N.W.2d 399, 402–03 (N.D. 1972).

While the issue of intervening-superseding cause is for the jury, *see Brauer v. James J. Igoe & Sons Construction, Inc.*, 186 N.W.2d 459, 468 (N.D. 1971), the defendant must adduce sufficient evidence that the intervening cause is an extraordinary one rather than being one that might be normally expected by a reasonably prudent person in view of the situation existing at the time of its intervention before the defendant will be entitled to an intervening-superseding cause instruction. *See State v. Columbus Hall Association*, 75 N.D. 275, 284, 27 N.W.2d 664, 668 (1947). We believe that such an instruction was justifiable in this case in light of the evidence submitted to the jury.

■ As we have already indicated, the accident occurred in the early morning hours of March 11, 1977, while it was still extremely dark. Bartels and Hackney had been drinking alcoholic beverages prior to entering the gravel pit and it reasonably could have been concluded from the evidence that they continued to consume alcohol while they were "four wheeling" at the gravel pit. Bartels had been "four wheeling" before, but never at the gravel pit; Hackney, on the other hand, was somewhat familiar with the terrain of the gravel pit after several visits during daylight hours but had never been to the gravel pit after dark. Thus, both individuals had a duty to exercise care for their own safety when proceeding in the dark at the gravel pit. The evidence at the trial indicated that the headlights on the jeep were powerful enough to allow a driver or any passengers to see in front of the jeep for several hundred feet; thus, one could conclude that Hackney and Bartels had several opportunities, particularly after "bottoming out" on the ridge of the drop off, to discover their peril and avoid it. Finally, the two entered the gravel pit from the main entrance to the gravel pit, where the warning signs were posted.

This evidence was sufficient to raise an issue as to whether negligence by Bartels and Hackney, individually or in concert, was the efficient cause of the accident and the injuries suffered by Bartels. The giving of the intervening-superseding cause instruction therefore was warranted. The City's theory at trial, at least in part, was that the negligence of Hackney and Bartels caused the jeep to plummet off of the ridge of the hill. Under this evidence, a charge of proximate cause would not be complete without an explanation of intervening act as a superseding cause. *See Taylor v. Allis-Chalmers Manufacturing Co.*, 320 F.Supp. 1381, 1388 (E.D. Pa. 1969).

Thus, since the instruction on intervening-superseding cause was proper and since

it is in the province of the jury to determine whether an act is an intervening-superseding cause, we find no reason to disturb the jury verdict in this case. The other objections raised by the plaintiff are also without merit. Accordingly, the Order of the trial court is affirmed.

LAY, Chief Judge, dissenting.

I respectfully dissent.

A new trial is warranted by reason of the trial court instructing on an intervening cause. An instruction on intervening cause is seldom warranted in a negligence suit. It is indeed only an "extraordinary" factual situation which justifies the submission of such an instruction to the jury. Simply because the plaintiff may be guilty of contributory negligence or because the facts might lead the jury to find that plaintiff's conduct was a contributing cause does not provide a basis for the court to instruct on intervening cause. In any event, it should be clear that such an instruction was prejudicial here, particularly where the facts support the jury's finding that the defendant was guilty of negligence.

North Dakota law governs the case. In *Boss v. Northern Pacific Railroad Co.*, 2 N.D. 128, 49 N.W. 655 (1891), the court observed:

> The intervening cause, to be a shield to defendant, must be such as to actually break all connection of cause and effect between the negligent act and the injury. To be a superseding cause *it must alone, and without the slightest aid from the act of defendant*, produce the injury, and to be a responsible cause it must be the culpable act of a responsible party.

*Id.* at 138, 49 N.W. at 658 (emphasis added).

Used in the context of intervening cause foreseeability refers not just to what is usual, customary or to be expected, but whether "[a] court or jury, looking at the matter after the event, and . . . knowing the situation which existed when the new force intervened, does not regard its intervention as so extraordinary as to fall outside the class of normal events." Restatement (Second) of Torts § 443, Comment b (1965). Hackney's actions do not, under the circumstances, appear to have been so extraordinary as to have been unforeseeable.

An independent intervening force is one not stimulated by a situation created by the actor's conduct. Restatement (Second) of Torts § 441, Comment c (1965).

Under the Restatement the relevant inquiry is whether the original act influenced in any way the doing of the intervening act. *Id.* If the city was negligent at all in not posting or fencing the property, knowing that the gravel pit was likely to attract trespassers, then the city's negligence had to have had some influence on Hackney's and Bartels' actions. The North Dakota Supreme Court has defined an independent intervening cause as one which is so distinct as to sever the connection of cause and effect between the negligent act and the injury. *Vick v. Fanning*, 129 N.W.2d 268, 271 (1964) (*quoting Boss v. Northern Pacific Railroad Co.*, 2 N.D. 128, 138, 49 N.W. 655, 658 (1891)). *See Wolff v. Light*, 156 N.W.2d 175 (N.D. 1968). In the instant case it is difficult to see how Hackney's actions may be said to sever the connection between the original negligence and the ultimate effect, the accident.

In order for the court to instruct on intervening cause reasonable men must be able to differ as to whether the intervening act was not only extraordinary but was *unrelated* as well. *See Moum v. Maercklein*, 201 N.W.2d 399, 403 (N.D. 1972).

Here the negligent act is directly related to the plaintiff's conduct. To hold that a jury could find as North Dakota law requires that the plaintiff's injury was not aided in the slightest from the acts of the defendant ignores the jury finding that the defendant was negligent. By its finding of negligence the jury necessarily had to find that the city knew of the condition of its land and an unreasonable danger to users was reasonably to be anticipated; that is, the jury had to find that the city had reason to anticipate the kind of occurrence which caused plaintiff's injury. The conduct of

the plaintiff "was reasonably foreseeable and was, in the words of Restatement (Second) of Torts § 449, Comment b (1965), "the very event the likelihood of which makes the [landowner] actor's conduct negligent and so subjects the actor to liability." *See Crohn v. Dupre*, 291 Minn. 290, 190 N.W.2d 678 (1971).

It was clear prejudicial error to instruct the jury on intervening cause. The resulting harm here is enormous; although this fact must not govern the legal result, it does point up the injurious consequences which flow from prejudicial error. The giving of the instruction here had the same effect as the court directing a verdict against the plaintiff. I would hold the plaintiff was denied a fair trial; at the very least he is entitled to a new one.