WILLIAM B. MOSIER III, Plaintiff-Appellee, v. WARREN E. DANZ, P.C., *et al.*, Defendants-Appellees (Long-Airdox Company, Plaintiff-Appellant).

Fourth District    No. 4—98—0120

Argued October 21, 1998.—Opinion filed January 28, 1999.—Rehearing denied March 1, 1999.

Jonathan J. Heiple (argued), of Heiple Law Offices, of Peoria, for appellant.

Lance R. Mallon (argued), of Mallon Law Firm, Ltd., of Wood River, for appellee William B. Mosier III.

Robert E. Gillespie and William P. Hardy (argued), both of Hinshaw & Culbertson, of Springfield, for other appellees.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff William B. Mosier was employed by plaintiff Long-Airdox Company (Long-Airdox). In November 1982, Mosier was injured while hanging sheet metal at Elkhart Mine. Mosier received approximately $346,000 in workers' compensation payments from Long-Airdox. In

December 1991, Mosier filed a legal malpractice action against his attorney, defendants Warren E. Danz, individually, and Warren E. Danz, P.C. (collectively, Danz), alleging negligence and breach of contract in failing to investigate and file suit against third parties responsible for Mosier's injury. Long-Airdox was permitted to intervene but was denied protection of a workers' compensation lien against any recovery Mosier might receive from Danz. Long-Airdox now appeals this order pursuant to a finding under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). We affirm.

## FACTS

Mosier's first amended complaint, filed in July 1992, alleged that he had retained Danz to pursue whatever claims he might have for injuries suffered in his employment-related accident. He alleged breach of contract and negligence, claiming that Danz had failed to (1) investigate his claims against any third parties, (2) file suit on Mosier's behalf based upon negligence and/or the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69), and (3) advise Mosier of the applicable statute of limitations in filing suit against third parties.

Long-Airdox filed a petition to intervene in July 1997. That petition was allowed, and Long-Airdox was granted leave to file a motion for protection of its lien under section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 1996)). Danz and Mosier objected to the motion, based upon a decision of the Fifth District Appellate Court in Woodward v. Pratt, Bradford & Tobin, P.C., 291 Ill. App. 3d 807, 684 N.E.2d 1028 (1997). The trial court entered an order on January 12, 1998, in which it found the amount of Long-Airdox's lien to be $346,759.77. In denying the motion for protection of the lien, the trial court stated it was required to follow the Woodward decision.

## ANALYSIS

█ Section 5(b) of the Act provides in pertinent part:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there

shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act. ***
***

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party.
***

In the event the employee or his personal representative fails to institute a proceeding against such third person at any time prior to 3 months before such action would be barred, the employer may in his own name or in the name of the employee, or his personal representative, commence a proceeding against such other person for the recovery of damages on account of such injury or death to the employee, and out of any amount recovered the employer shall pay over to the injured employee or his personal representatives all sums collected from such other person by judgment or otherwise in excess of the amount of such compensation paid or to be paid under this Act ***." 820 ILCS 305/5(b) (West 1996).

Long-Airdox concedes that it did not file suit against any third persons who may have been responsible for Mosier's injuries, as permitted by section 5(b) of the Act.

One of the purposes of that section is to prevent the employee from obtaining a double recovery from the employer and a third-party tortfeasor. *Kozak v. Moiduddin*, 294 Ill. App. 3d 365, 369, 689 N.E.2d 217, 221 (1997). Long-Airdox contends that such a double recovery will result here if it is not allowed to assert a lien under the Act. It argues that should Mosier prevail in his suit against Danz, he will, in effect, be compensated for the injuries caused by the third-party tortfeasor because it will be necessary for Mosier to prove that he would have recovered from the tortfeasor had his lawsuit been filed by Danz. A legal malpractice action has been referred to as a "suit within a suit," *i.e.*, the attorney stands in the shoes of the third-party tortfeasor to compensate the plaintiff for his injury. The objective is to establish what the result should have been had the case been filed. *Nika v. Danz*, 199 Ill. App. 3d 296, 308, 556 N.E.2d 873, 882 (1990).

Danz argues that Mosier will not receive a double recovery in the legal malpractice action because, in the underlying action against the tortfeasor, Mosier's recovery would have been reduced by the amount of Long-Airdox's section 5(b) lien. Danz asserts that Mosier can re-

cover no more in the legal malpractice action than he would have in the underlying action. In *Moores v. Greenberg*, 834 F.2d 1105 (1st Cir. 1987), an employee sued his attorney for failure to relay to him a $90,000 settlement offer in his personal injury action against a third-party tortfeasor. The jury was instructed that, in awarding damages, it should subtract the contractual attorney fee of one-third of the recovery. The appellate court found this proper, noting that, had his attorney not been negligent, the employee would have received only $60,000 from the settlement. The court also held that the amount of recovery in the legal malpractice case was properly reduced by the amount of workers' compensation paid to the employee for which the employer would have had a subrogation lien on any recovery from the third-party tortfeasor. *Moores*, 834 F.2d at 1114.

Here, the trial court found that the amount of Long-Airdox's lien in the underlying action would have been $346,759.77. Since Mosier may recover in the legal malpractice action only that which he would have recovered in the underlying action, the amount of Long-Airdox's lien would be set off by the trial court from any damages awarded to Mosier from Danz. Thus, Mosier would not receive a double recovery. We note that at oral argument in this case, Mosier's counsel agreed that the amount of Long-Airdox's section 5(b) lien would have to be deducted from any damages recovered from Danz.

Long-Airdox cites a federal case from the Seventh Circuit Court of Appeals in support of its argument that it is entitled to assert a lien in the instant case. In *Williams v. Katz*, 23 F.3d 190 (7th Cir. 1994), the employee brought a legal malpractice action against his former attorneys, charging they were negligent in allowing the statute of limitations to expire on a claim against doctors who treated him for a work-related injury. It was alleged the injury had been aggravated by the doctors' negligent failure to properly diagnose the injury. The employer, who had paid benefits under the Act, sought to intervene and assert its section 5(b) lien on any recovery by the employee from his attorneys. The district court denied intervention and the employer appealed. The appeals court rejected the employee's argument that, because the attorneys did not injure his arm, any damages he recovers from them would not be subject to the employer's lien under the Act, stating:

> "[The Act] recognizes an employer's lien whenever the injury occurred 'under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages.' The injury to [the employee] occurred in circumstances that made his lawyers potentially liable for the consequences of the injury. This can be seen by considering the nature of the damages

that [the employee] seeks to recover from them. He seeks *exactly* the same damages that he would have sought from the doctors had he been able to bring a timely suit against them—the medical expenses, the lost earnings, the disfigurement, the pain and suffering, caused by the negligent doctors." (Emphasis in original.) *Williams*, 23 F.3d at 192-93.

The *Williams* court found that the lien provision of section 5(b) of the Act is intended to prevent a windfall to the employee and noted that this provision enables the damages from an industrial accident to be apportioned among the actual victims. In this case, the court stated, the employer may have been a victim of the doctors' negligence, as it may have had to pay out additional benefits to the employee caused by that negligence. The court noted that although the statutory language of section 5(b) of the Act does not clearly include legal malpractice claims, neither does it exclude them. *Williams*, 23 F.3d at 193.

Long-Airdox also relies on *Kozak*, a first district case where an employee suffered an injury to his foot and ankle while working for his employer, Yellow Freight. Yellow Freight settled the employee's workers' compensation claim. The employee thereafter filed a medical malpractice claim against a medical doctor and Dr. Rembos, a podiatrist. Yellow Freight sought to intervene to claim its lien on the employee's recovery. Rembos sought to join Yellow Freight as a third-party defendant for contribution purposes. Yellow Freight successfully moved for dismissal of the third-party claim, arguing that the employee's initial injury was separate and distinct from the injury caused by the doctors' negligent treatment. The employee then moved to dismiss Yellow Freight as an intervenor, arguing that if the two injuries were separate and distinct, Yellow Freight had no right to a workers' compensation lien on any recovery from the doctors. The trial court granted the motion, finding that the doctrine of judicial estoppel applied to bar Yellow Freight from asserting its lien.

On appeal, the appellate court found the doctrine of judicial estoppel inapplicable and held that Yellow Freight was entitled to a lien on any recovery the employee might obtain against the doctors, reasoning:

"In the present case, [the employee] was injured during the course of his employ at Yellow Freight, an injury that he alleges Dr. Rembos exacerbated by his negligent treatment. Before Yellow Freight knew of the plaintiffs' medical malpractice claims, it agreed to pay compensation for [the employee's] medical expenses, temporary total disability and permanent partial disability—as required by [the Act]. Shortly after the settlement, plaintiffs filed the present action seeking compensation for, among other things, medical ex-

penses, loss of mobility, and disability, as well as loss of earnings and earning capacity. In our opinion, these damages translate roughly into medical expenses, temporary total disability and permanent partial disability caused by the malpractice. Under these facts, the distinct possibility exists that Yellow Freight already paid compensation benefits to [the employee] for damages that actually arose from Dr. Rembos' alleged medical malpractice; thus, Yellow Freight paid compensation for an injury (the negligent treatment) 'caused under circumstances creating a legal liability for damages on the part of [Dr. Rembos] to pay damages.' Accordingly, Yellow Freight should remain free to assert its lien under section 5(b), in order to prevent [the employee] from securing a double recovery." *Kozak*, 294 Ill. App. 3d at 369-70, 689 N.E.2d at 221.

The *Kozak* court cited the *Williams* case with favor, although noting that, in *Williams*, the employer's lien was on a recovery for an injury twice removed from the original workplace injury. *Kozak*, 294 Ill. App. 3d at 371, 689 N.E.2d at 221-22.

The *Kozak* case does not support Long-Airdox's position. There, the physician against whom the employee filed suit had contributed to the original injury through his malpractice. Thus, Yellow Freight's liability to the employee for workers' compensation payments was increased by the actions of the physician. In the instant case, any alleged malpractice on Danz's part is not related to Mosier's original injury for which Long-Airdox paid compensation. The *Williams* court, in reaching its decision, failed to heed the plain language of section 5(b) of the Act. Therefore, neither *Kozak* nor *Williams* supports Long-Airdox's argument.

The Fifth District Appellate Court has spoken directly to the issue posed in our case. In *Woodward*, 291 Ill. App. 3d 807, 684 N.E.2d 1028, relied on by the trial court here, the employer's workers' compensation carrier, Home Insurance Company (Home), paid workers' compensation benefits to Woodward, its insured's employee. A law firm (Pratt) retained by Woodward to represent him filed suit against the third-party tortfeasor (Crown) on grounds of strict liability and negligence in the design and manufacture of a pallet truck being operated by Woodward at the time of his injury. Ultimately, that case was removed to federal district court and dismissed on grounds that the statute of limitations had expired. Woodward sued Pratt for legal malpractice. Home was allowed to intervene and file its lien against any recovery Woodward might receive from Pratt. On Woodward's motion, the trial court dismissed the claim on the ground that any recovery in the malpractice case was not subject to Home's lien.

On appeal, Home argued that section 5(b) of the Act is akin to a

common law right of subrogation and its purpose is to prevent a double recovery. The appellate court held that Home's lien did not attach to a potential recovery by Woodward from Pratt for legal malpractice. The court noted that section 5(b) of the Act grants the employer two distinct rights—a lien on any recovery by the employee against a tortfeasor that caused the injury and a right to file suit against the tortfeasor if the employee has not done so prior to three months before the limitations period expires. In the latter case, the employee's right of action is transferred to the employer, who may then file the same suit the employee could have filed against the tortfeasor. The court looked to the statutory language of section 5(b) of the Act in determining that Pratt did not cause the injury to Woodward that led to the workers' compensation payments. The lien of the employer attaches to any award out of which the employee might be compensated from "such third person." That third person is the "injurer," *i.e.*, Crown, whose acts or omissions caused the right to workers' compensation benefits to accrue. The cause of action held by Woodward against Pratt is not for "injury" or "death," as contemplated by section 5(b) of the Act. Once the limitations period expires, both the employee and the employer lose their cause of action for injury or death. The nature of the cause of action against allegedly negligent attorneys is for pecuniary injuries to intangible property interests. That cause of action is personal and not assignable; it cannot be transferred to the employer, as contemplated by section 5(b) of the Act. Thus, the employer has no right to file the employee's suit for legal malpractice against the employee's attorney. No attorney-client relationship existed between Home and Pratt, and Pratt owed no duty to Home. A failure to timely file a suit against Crown is therefore not a proximate cause of any injury to Home. *Woodward*, 291 Ill. App. 3d at 814-15, 684 N.E.2d at 1033.

In a very recent case, the First District Appellate Court has held that an employer is not entitled to be reimbursed from the proceeds of a legal malpractice action for compensation payments made under the Act. In *Eastman v. Messner*, 302 Ill. App. 3d 526 (1998), the employer's insurer paid the employee workers' compensation payments for a work-related injury. The employee retained an attorney to file a personal injury action. However, the attorney failed to file suit within the period of the statute of limitations and the employee sued the attorney for malpractice. The insurer's petition to intervene and assert a lien under section 5(b) of the Act was rejected by the trial court. The appellate court affirmed, citing the *Woodward* case and relying on the plain language of section 5(b) of the Act. The court held that the injury involved in the legal malpractice case is not the injury "for

which compensation is payable" under the Act. *Eastman*, 302 Ill. App. 3d at 530.

■ We agree with the *Woodward* and *Eastman* courts that an employer is not entitled to a workers' compensation lien in a legal malpractice case. Although Long-Airdox urges us to follow *Williams* and construe the statute in a manner that would allow such a lien, the statutory language cannot reasonably be read to support such a construction. The analysis in *Woodward* makes this clear:

> "There is no lien except by virtue of the statute. The court cannot create a lien not provided for by the statute, no matter how desirable the court may believe that result to be. [Citation.] Paragraph 1 of section 5(b) states that·'[w]here the *injury* or death *for which compensation is payable* under this Act *was caused* under circumstances creating a legal liability for damages on the part of *some person* other than his employer to pay damages' (emphasis added) (820 ILCS 805/5(b) (West 1994)), a lien arises against any recovery from such other person. The plaintiff's allegedly negligent lawyers did not *cause* the injury that led to compensation payments. The third paragraph of section 5(b) states that 'the employer may have or claim a lien upon any award \*\*\* out of which such employee might be compensated from *such third party*.' (Emphasis added.) 820 ILCS 305/5(b) (West 1994). This third party is the 'injurer' whose acts or omissions caused the expenditure of medical and hospital payments [citation], not the lawyer who was allegedly negligent in failing to sue the injurer." *Woodward*, 291 Ill. App. 3d at 814, 684 N.E.2d at 1033.

## CONCLUSION

We therefore conclude that an employer may not assert a lien under section 5(b) of the Act against damages received by its employee from the employee's attorney in a legal malpractice action. Accordingly, the trial court's order denying Long-Airdox's motion for protection of lien is affirmed.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.