2008 ND 78

**Robert N. HAUGENOE, Claimant and Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**Earl's Electric, Respondent.**

No. 20070099.

Supreme Court of North Dakota.

April 22, 2008.

---

Paul A. Sortland, Minneapolis, MN, for claimant and appellant.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, N.D., for appellee.

MARING, Justice.

[¶ 1] Robert Haugenoe appeals from a district court judgment affirming an agency order granting Workforce Safety and Insurance ("WSI") a subrogation interest in a legal malpractice settlement. The legal malpractice action concerned Haugenoe's attorney's failure to properly prosecute a medical malpractice claim related to

a physician's aggravation of a work-related injury suffered by Haugenoe. Haugenoe asserts that N.D.C.C. § 65–01–09, the subrogation provision of the workforce safety and insurance law, does not grant WSI a subrogation interest in the legal malpractice settlement. We agree. We hold that N.D.C.C. § 65–01–09 does not grant WSI a subrogation interest in an injured worker's legal malpractice claim against a third-party tortfeasor. We, therefore, reverse the order of WSI and the district court judgment.

I

[¶ 2] Robert Haugenoe suffered a work-related injury in May 1999 while employed by Earl's Electric in Williston. He filed a claim for WSI benefits, and WSI accepted the claim. Haugenoe retained a lawyer to represent him in a medical malpractice lawsuit after he concluded that his physician had failed to properly treat his injury. As part of Haugenoe's representation, his lawyers agreed with WSI to represent its statutory subrogation interest in any damages recovered from the physician.

[¶ 3] Haugenoe's attorneys failed to properly prosecute his claims against the physician, and a significant part of his claims against the physician were dismissed. Haugenoe retained other legal counsel to represent him for the prosecution of his remaining claims against the physician and for the prosecution of any claims against his former lawyers. Haugenoe settled his legal malpractice claims against his former lawyers. After Haugenoe settled the legal malpractice claims, WSI issued an order asserting it had a subrogation interest in the settlement.

[¶ 4] Haugenoe requested a rehearing of WSI's order asserting a subrogation lien in the legal malpractice settlement. An administrative hearing followed. The ad-

ministrative law judge ("ALJ") recommended on November 15, 2006, that WSI had a subrogation interest in the legal malpractice damages recovered by Haugenoe. WSI issued its final order on December 13, 2006. WSI's final order adopted the ALJ's recommended findings, conclusions, and order in their entirety except for one conclusion of law, which was stricken. Haugenoe appealed. The district court affirmed WSI's final order. Haugenoe appeals to this Court, arguing N.D.C.C. § 65–01–09 does not grant WSI a subrogation interest in his legal malpractice settlement.

## II

[¶ 5] On appeal from a district court judgment in an appeal from an agency order, we review the agency order in the same manner as the district court. N.D.C.C. § 28–32–49. A district court must affirm the order of an administrative agency unless the district court determines that any of the following are present:

1.  The order is not in accordance with the law.

. . . .

5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.
6.  The conclusions of law and order of the agency are not supported by its finding of fact.

N.D.C.C. § 28–32–46. We do not make independent findings of fact or substitute our judgment for that of the administrative agency. *Aga v. Workforce Safety and Ins.*, 2006 ND 254, ¶ 12, 725 N.W.2d 204. We determine only "whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Id.*

[¶ 6] Questions of law are fully reviewable on appeal from an administrative order. *Forbes v. Workforce Safety and Ins.*, 2006 ND 208, ¶ 10, 722 N.W.2d 536. Questions of statutory interpretation are questions of law. *Rojas v. Workforce Safety and Ins.*, 2006 ND 221, ¶ 13, 723 N.W.2d 403. "Unless otherwise provided, statutes in effect on the date of an injury govern WSI benefits." *Rodenbiker v. Workforce Safety and Ins.*, 2007 ND 169, ¶ 16, 740 N.W.2d 831. Thus, the Workforce Safety and Insurance statute in effect in May 1999 governs Haugenoe's benefits and provides the statutory provisions relevant to our consideration of this case.

## III

[¶ 7] This case presents a question of first impression for this Court, resolution of which requires us to interpret N.D.C.C. § 65–01–09, the statutory provision subrogating WSI to injured workers' recoveries against certain third parties. The particular issue we address is whether WSI is subrogated to an injured worker's cause of action against an attorney for legal malpractice in prosecuting a medical malpractice action against a physician who aggravated the worker's injury.

[¶ 8] Our primary objective in statutory interpretation is to determine the legislature's intent. *Rojas*, 2006 ND 221, ¶ 13, 723 N.W.2d 403. To determine the legislature's intent, we look at the language of the statute itself and give it its plain, ordinary, and commonly understood meaning. *Overboe v. Farm Credit Services*, 2001 ND 58, ¶ 9, 623 N.W.2d 372. "Although courts may resort to extrinsic aids to interpret a statute if it is ambiguous, we look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute." *Id.* We harmonize statutes when possible to avoid conflict between them. *Rojas*,

2006 ND 221, ¶ 13, 723 N.W.2d 403. Our interpretation of a statute "must be consistent with legislative intent and done in a manner which will accomplish the policy goals and objectives of the statutes." *Id.* "We presume the Legislature did not intend an unreasonable result or unjust consequence." *Id.*

[¶ 9] The purpose of our workforce safety and insurance law is to provide "sure and certain relief" to injured workers "regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation." N.D.C.C. § 65–01–01. In turn, the law abolishes "all civil actions and civil claims for relief for those personal injuries" suffered by injured workers. *Id.* While the law relieves employers from liability for the workers' work-related injuries, it does not relieve third-party tortfeasors from liability for such injuries. *See Polucha v. Landes,* 60 N.D. 159, 233 N.W. 264, 269 (1930). Instead, it "expressly provides measures for realizing upon that liability, both in the interest of making the fund whole on account of the award and in the interest of the employee." *Id.*

■■■ [¶ 10] The statute allows WSI to realize upon the liability of third-party tortfeasors through its subrogation provision. *See id.* Section 65–01–09, N.D.C.C., grants WSI a subrogation interest in injured workers' recoveries against certain third parties:

> When an injury or death for which compensation is payable under provisions of this title shall have been sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto, the injured employee, or the employee's dependents may claim compensation under this title and proceed at law to recover damages against such other person.

N.D.C.C. § 65–01–09 (1999). WSI's subrogation rights are intended "to reimburse the fund, to the extent possible, at the expense of the persons at fault." *Blaskowski v. N.D. Workmen's Comp. Bureau,* 380 N.W.2d 333, 335 (N.D.1986). The legislature intended this provision to create an incentive for workers to pursue and litigate third-party claims. *Lawson v. N.D. Workmen's Comp. Bureau,* 409 N.W.2d 344, 347 (N.D.1987).

[¶ 11] We already established in *Polucha,* 60 N.D. 159, 233 N.W. 264, that an injured worker is entitled to benefits for the aggravation of his work-related injury due to the mistake of a physician which occurs in the course of treating the injury. *See id.* at 268. We also established that WSI is subrogated to an injured worker's cause of action against a physician for aggravation of a work-related injury occasioned by the physician's malpractice. *See id.* at 269. Like the 1999 version of the WSI subrogation statute, the then-applicable version of the WSI subrogation statute provided that WSI was granted a subrogation interest in injured workers' recoveries against third parties " '[w]hen an injury or death for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the North Dakota workmen's compensation fund a legal liability to pay damages in respect thereto....' " *See id.* (quoting Section 396a20 of the 1925 Supplement to the Compiled Laws of 1913). We held that the subrogation provision "subrogates the fund to any cause of action against a third person for a compensable injury." *Polucha,* 233 N.W. at 269. We reasoned that "the injury, if any, caused by the malpractice of the physician is regarded as resulting from the original injury and is compensable under the law." *Id.*

[¶ 12] Now we must determine whether WSI's statutory subrogation interest also extends to an injured worker's cause of action against an attorney for the attorney's failure to properly prosecute a medical malpractice claim against a physician whose treatment of the injured worker aggravated the worker's injury. The conclusions reached by other courts that have considered this issue are decidedly mixed. Some have held that the workers' compensation insurer is entitled to a subrogation interest in legal malpractice proceeds. *See Frazier v. N.J. Mfrs. Ins. Co.,* 142 N.J. 590, 667 A.2d 670 (1995); *Williams v. Katz,* 23 F.3d 190 (7th Cir.1994) (interpreting Illinois law); *Nicholas v. Morgan,* 58 P.3d 775 (Okla.2002); *Tallerday v. Delong,* 68 Wash.App. 351, 842 P.2d 1023 (1993); *Graham v. Liberty Mut. Group,* 1998 WL 961376 (E.D.Pa. Dec.15, 1998); *Poole v. Workers' Comp. Appeal Bd.,* 570 Pa. 495, 810 A.2d 1182 (2002); *Toole v. EBI Cos.,* 314 Or. 102, 838 P.2d 60 (1992); *Bongiorno v. Liberty Mut. Ins. Co.,* 417 Mass. 396, 630 N.E.2d 274 (1994). Others have held that the insurer is not entitled to such proceeds. *See Head v. Continental Casualty Co.,* 931 So.2d 1192 (La.Ct.App.2006); *ATS, Inc. v. Listenberger,* 111 S.W.3d 495 (Mo.Ct.App.2003); *Mosier v. Warren E. Danz, P.C.,* 302 Ill.App.3d 731, 235 Ill.Dec. 823, 706 N.E.2d 83 (1999); *Eastman v. Messner,* 302 Ill.App.3d 526, 236 Ill.Dec. 204, 707 N.E.2d 49 (1998); *Woodward v. Pratt, Bradford & Tobin, P.C.,* 291 Ill. App.3d 807, 226 Ill.Dec. 32, 684 N.E.2d 1028 (1997); *Sladek v. K Mart Corp.,* 493 N.W.2d 838 (Iowa 1992); *Smith v. Long,* 178 Wis.2d 797, 505 N.W.2d 429 (1993); *In re Worker's Comp. Lien,* 231 Mich.App. 556, 591 N.W.2d 221 (1998); *Va. Municipal Group Self–Ins. Assn. v. Crawford,* 2004 WL 3132010 (Va.Cir.Ct. Nov.24, 2004); *Travelers Ins. Co. v. Breese,* 138 Ariz. 508, 675 P.2d 1327 (Ct.App.1983); *Fink v. Dimick,* 179 F.Supp. 354 (D.Conn. 1959); *Mt. Pleasant Special Sch. Dist. v. Gebhart,* 378 A.2d 146 (Del.Ch.1977); *Soliz v. Spielman,* 44 Cal.App.3d 70, 118 Cal. Rptr. 127 (1974).

## IV

[¶ 13] Haugenoe asserts that WSI does not have a subrogation interest in the legal malpractice settlement. He contends N.D.C.C. § 65–01–09 does not give WSI a lien over his legal malpractice settlement award because there is no compensation payable for legal malpractice under Title 65, N.D.C.C. Moreover, Haugenoe asserts the benefits WSI paid him were not for harm suffered because of Haugenoe's attorney's negligence.

[¶ 14] Haugenoe insists that WSI only obtains a lien when the third party at issue has liability relating to the worker's physical injury. Haugenoe contends that his former attorney was liable for his failure to pursue the medical malpractice claim, which is separate from the compensable physical injury suffered by Haugenoe. Haugenoe further argues that the obligation of the attorney arose separately from and subsequent to the third-party tortfeasor physician's obligation to compensate Haugenoe for aggravating his physical injury.

[¶ 15] WSI argues that it has a statutory subrogation interest in the legal malpractice settlement award. WSI contends the purpose of statutorily granting WSI subrogation rights in injured employees' damage awards arising from third-party actions is to reimburse the WSI fund at the expense of the persons at fault. WSI argues that the term "legal liability" should be broadly construed.

[¶ 16] WSI contends it is not necessary for settlement damages to arise out of the initial work injury or an aggravation of the initial physical injury before WSI can as-

sert a subrogation interest in the damages. WSI asserts it should have a subrogation interest in the damages Haugenoe recovered from his attorney because those damages are the same as the damages he would have recovered from the physician that aggravated his work-related injury had the lawyer not been negligent. This argument relies on an application of the "case-within-a-case" doctrine.

[¶ 17] The "case-within-a-case" doctrine provides that " 'a legal malpractice claimant must prove two claims: first, the one that was lost, and also that his attorney's negligence caused that loss.' " *Dan Nelson Construction, Inc. v. Nodland & Dickson*, 2000 ND 61, ¶ 14, 608 N.W.2d 267 (citation omitted). The implication is that, in order to succeed in the legal malpractice action, "the employee must demonstrate not merely an injury as a result of the malfeasance of his previous counsel, but also the malfeasance of the original tortfeasor which resulted in the underlying injury." *Poole*, 810 A.2d at 1184. Other courts have held that an insurer may rely upon the injured worker's legal malpractice action to fulfill any subrogation statute requirement that the compensable injury be caused by a third party. *See, e.g., id.* at 1185.

## V

[¶ 18] We hold that N.D.C.C. § 65–01–09 does not grant WSI a subrogation interest in an injured worker's legal malpractice claim against an attorney who committed malpractice in handling the injured worker's claim against a third-party tortfeasor. Thus, WSI does not have a subrogation interest in Haugenoe's legal malpractice settlement award.

[¶ 19] The plain language of N.D.C.C. § 65–01–09 (1999) creates a condition precedent to WSI's subrogation. WSI is subrogated to the rights of the injured employee only "[w]hen an injury or death for which compensation is payable under provisions of this title shall have been sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto." *Id.* In *Polucha*, we interpreted this provision as subrogating the fund to "any cause of action against a third person for a *compensable injury*." 233 N.W. at 269 (emphasis added).

[¶ 20] "Compensable injury" is a defined term under title 65, N.D.C.C. A "compensable injury" is an "injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." N.D.C.C. § 65–01–02(11) (1999). The statute lists numerous types of injuries that do and do not constitute "compensable injuries" under the statute. *See id.* The import of these lists is that only physical injuries suffered by workers in the course of their employment while *conducting lawful activities* and caused by the employment are compensable under the statute. *See id.*

[¶ 21] Although an injured worker is required by the case-within-a-case doctrine to demonstrate the malfeasance of the original tortfeasor resulting in the worker's underlying injury in order to recover damages in a legal malpractice claim, the injured worker's claim against his attorney is unlike an injured worker's underlying third-party claim. As a Missouri appellate court noted, a physical injury is "distinguishable from the strictly economic loss compensated by a legal malpractice claim." *See ATS, Inc.*, 111 S.W.3d at 499. We will not ignore the language of the subrogation statute and grant WSI a subrogation interest in a legal malpractice claim simply because a legal malpractice plaintiff is required to satisfy this standard of proof.

[¶ 22] Moreover, an injured worker's claim against his attorney is independent to the initial third-party claim in which WSI is granted a subrogation interest. The worker's claim against the attorney would not have arisen except for the worker's hiring of an attorney. As a California appellate court remarked, if an employee is not liable to a workers' compensation insurer for *not* pursuing a claim against a third-party tortfeasor, then he is not liable where his failure to prosecute a claim was due to the negligence of an attorney. *See Soliz*, 118 Cal.Rptr. at 128.

[¶ 23] Our holding does not deny WSI a remedy for damages suffered as a result of an attorney's malpractice in the prosecution of a claim against a third-party tortfeasor. WSI is free to assert its own claim against an attorney who has committed malpractice while representing WSI's subrogation interest.

## VI

[¶ 24] Here, the condition precedent to WSI's subrogation was not met because Haugenoe did not recover from a third party who caused or aggravated his physical injury. Rather, Haugenoe's recovery is from an attorney who had nothing to do with his physical injury. The damage suffered by Haugenoe as a result of his attorney's legal malpractice is not a "compensable injury." Once Haugenoe's attorney failed to properly prosecute his medical malpractice claim, he was forever barred from recovering from the physician for the aggravation of his compensable injury; thus, there is no possibility of a literal application of the subrogation statute to his legal malpractice settlement. Haugenoe recovered for the loss of a legal right, not a physical injury as contemplated by the statute.

[¶ 25] We, therefore, hold that WSI does not have a subrogation interest in Haugenoe's legal malpractice settlement.

## VII

[¶ 26] In the alternative, Haugenoe argues that his settlement with his attorney was structured in a manner that exempted the settlement award from any subrogation interest WSI may have in the award. Haugenoe further argues that, even if WSI has a subrogation interest, WSI waived that interest by not participating in the legal malpractice action. We do not reach these issues because we hold that N.D.C.C. § 65–01–09 does not grant WSI a subrogation interest in the legal malpractice settlement.

## VIII

[¶ 27] We hold that N.D.C.C. § 65–01–09 does not grant WSI a subrogation interest in an injured worker's legal malpractice claim against an attorney who committed malpractice in handling the injured worker's claim against a third-party tortfeasor. We, therefore, reverse the order of WSI and the district court judgment.

[¶ 28] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

[¶ 29] The Honorable STEVEN E. McCULLOUGH, D.J., sitting in place of CROTHERS, J., disqualified.

McCULLOUGH, District Judge, concurring.

[¶ 30] I must respectfully only concur in the result reached in the majority opinion.

[¶ 31] As the majority correctly notes, this case involves the issue of whether WSI has a subrogation interest in Haugenoe's legal malpractice settlement. The starting point for this analysis is section

65–01–09 of the North Dakota Century Code. This statute grants WSI a subrogation interest in a covered worker's recovery from a third party for a compensable injury. N.D.C.C. § 65–01–09. The Code defines "compensable injury," in part, as follows:

"Compensable injury" means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings. N.D.C.C. § 65–01–02(10). Further, the Code provides several situations which are specifically exempted from the term "compensable injury." N.D.C.C. § 65–01–02(10)(b). Thus a "compensable injury" does not include: "A nonemployment injury that, although acting upon a prior compensable injury, is an independent intervening cause of injury." N.D.C.C. § 65–01–02(10)(b)(8). A common sense reading of this provision leads inescapably to the conclusion that a non-employment injury which is not an independent intervening cause is a "compensable injury."[1] If a covered worker receives a recovery from a third party for such a compensable injury, WSI may assert its subrogation interest in

the recovery. I believe the majority and I are in agreement as to this general proposition. The majority and I part company, however, over how WSI erred in deciding it was entitled to a subrogation interest in Haugenoe's legal malpractice recovery. In order to understand my difference with the majority it is important to understand the state of the record below.

[¶ 32] The Agency found Haugenoe sustained three distinct injuries in this case.[2] The ALJ's Recommended Findings of Fact, Conclusions of Law and Order[3] provide, in part, that "Robert Haugenoe sustained three separate and distinct, although related injuries." Those injuries are: 1) the injury which resulted from his initial fall; 2) the injury which resulted from the medical malpractice; and 3) the injury which resulted from the legal malpractice. The Agency then concluded, as a matter of law, that "[e]ach of those injuries is compensable within the meaning of the statute." In so ruling, the Agency necessarily concluded, as a matter of law, that the medical malpractice was not an independent intervening cause of Haugenoe's injuries.[4]

1. As will be explained in more detail herein, independent causation is governed by the concept of foreseeability. *See* ¶ 36, *infra*. When winding one's way through the many-layered thicket of negatives and double negatives found in the obtuse language of the WSI statutes, keeping in mind the following tautological formulas can be quite useful:

foreseeable = no intervening cause = compensable injury = subrogation
not foreseeable = intervening cause = no compensable injury = no subrogation.

2. Although the summation of these three types of injuries is found in the second Conclusion of Law, the ALJ (and therefore by adoption the Agency) identified each of these injuries in separate Findings of Fact. Recommended Findings of Fact, Conclusions of Law, and Order at Findings of Fact ¶¶ 1 (injury from the fall), 2 (injury from the medical

malpractice) and 5 (injury from the legal malpractice).

3. The Agency adopted the ALJ's Recommended Findings of Fact, Conclusions of Law, and Order verbatim, with the exception of one conclusion of law not relevant to these proceedings. It is this document, therefore, to which I will refer when speaking of the Agency's decision.

4. The Agency's adopted Findings include no discussion of intervening cause. Undoubtedly the Agency, like the majority, simply relied upon *Polucha v. Landes*, 60 N.D. 159, 233 N.W. 264 (1930), as support for the proposition it could decide the issues of whether the subsequent acts of malpractice were independent intervening causes as a matter of law. As set forth herein, I believe this is not in accordance with the proper state of the law in

[¶ 33] Haugenoe did not contest whether WSI had a right of subrogation in the proceeds of the medical malpractice settlement. Therefore, WSI's right of subrogation in the proceeds of the medical malpractice settlement is not at issue in this appeal. The issue before this Court is solely whether WSI has a right of subrogation in the proceeds of the settlement of the third recognized injury, the legal malpractice. In my view, however, whether medical malpractice is, as a matter of law, an intervening cause is decisive as to whether WSI has a right of subrogation to the settlement proceeds from legal malpractice claim because of the case-within-a-case doctrine. *See Dan Nelson Constr., Inc. v. Nodland & Dickson,* 2000 ND 61, 608 N.W.2d 267. If the Agency erred in concluding as a matter of law that the medical malpractice was not an intervening cause, and hence a compensable injury for which its right of subrogation attached, then this error taints its further legal conclusion that WSI has a right of subrogation to the legal malpractice settlement. Because I believe WSI so erred, like the majority I believe a reversal of the Agency's decision is warranted because the Agency's order is not in accordance with the law. *See* N.D.C.C. § 28–32–46(1).

[¶ 34] The majority cites *Polucha v. Landes,* 60 N.D. 159, 233 N.W. 264 (1930), for the proposition that as a matter of law the medical malpractice was a compensable injury. The majority then concludes because the legal malpractice is not a "physical injury" it is not a compensable injury, and hence, WSI does not have a right of subrogation in the proceeds of the legal malpractice settlement. I believe concluding the medical malpractice was not an intervening cause as a matter of law is error. This error impermissibly underlies both the majority's opinion and the

Agency's decision that it had a right of subrogation to the legal malpractice settlement proceeds. I would, therefore, reverse the Agency decision without needing to reach the issue of whether the legal malpractice is a "physical injury."

[¶ 35] I do not believe *Polucha* has any continued precedential value in North Dakota. Not only do statutory enactments and decisional law cast doubt on its continued vitality, but I believe *Polucha* is contrary to well established common law principles in North Dakota and lacks a sufficient rationale to warrant further adherence.

[¶ 36] In order to understand the decision in *Polucha* it is imperative to review general common law principles related to causation. Under the common law, the issue of whether a cause of injury was intervening or superseding has always been governed by concepts of foreseeability of harm. Thus, well over a century ago, this Court explained the standard for determining the existence of an intervening cause was if the jury could "with some reasonable degree of certainty determine the question whether the result could reasonably have been expected to occur in light of the circumstances." *Boss v. Northern Pac. Ry. Co.,* 2 N.D. 128, 49 N.W. 655, 658 (1891). Over five decades later, this Court described this standard as follows:

> The determination of whether an intervening force is the efficient cause of an injury involves a number of considerations including whether or not the intervening cause is an extraordinary one or one which might be normally expected by a reasonable person in view of the situation existing at the time of its intervention. . . . The foreseeability of the act of the unknown person in this case is the

North Dakota, and therefore, mandates reversal. N.D.C.C. § 28–32–46.

crucial point of the sufficiency of the evidence.

*State v. Columbus Hall Ass'n,* 75 N.D. 275, 27 N.W.2d 664, 668 (1947) (citation omitted). This same standard retains its vitality today. This Court stated in 2005:

> To relieve a defendant of the consequences of his negligence, an intervening cause must be both independent and unforeseeable.... The intervening negligence of another cannot be a superseding cause that extinguishes a tortfeasor's liability if that negligence was a foreseeable consequence of the situation created by the tortfeasor.

*Miller v. Diamond Resources, Inc.,* 2005 ND 150, ¶ 13, 703 N.W.2d 316 (citations omitted).

[¶ 37] Just as consistently, this Court has stated issues of causation and foreseeability are generally questions of fact, not matters of law. *See Miller,* 2005 ND 150, 703 N.W.2d 316 (in case in which defendant's alleged negligence in obtaining mineral interest was followed by plaintiff's alleged fault in failure to independently follow statute to obtain mineral interests the court reversed a grant of summary judgment for the defendant, stating: "[t]he determination of whether certain conduct is a superseding, intervening cause is a question of fact"); *Stewart v. Ryan,* 520 N.W.2d 39 (N.D.1994) (in dram shop action where obviously intoxicated individual shot a police officer the court reversed a grant of summary judgment for the defendant, holding the district court erred in finding a superseding, intervening cause as a matter of law instead of submitting issue to the jury for its factual determination); *Champagne v. United States,* 513 N.W.2d 75 (N.D.1994) (in case in which certified question of whether a court should compare the fault of a mental health provider who had discharged a patient with the fault of the patient who then committed suicide the court stated the comparison should be made generally by the trier of fact); *Jones v. Ahlberg,* 489 N.W.2d 576 (N.D.1992) (in case in which police officers' negligence in hot pursuit of suspect was followed by suspect's erratic driving, all of which resulted in an automobile accident which injured a passenger in suspect's vehicle, the court rejected the argument the suspect's action constituted a superseding, intervening cause as a matter of law, instead ruling reasonable minds could differ on the foreseeability of the accident); *Lang v. Wonnenberg,* 455 N.W.2d 832 (N.D.1990) (in case in which upstream landowner's actions in draining land without authorization was followed by township's alleged negligence in raising downstream road without allowing drainage through the road the court stated the district court did not err in rejecting the contention that the act of the township was an intervening cause as a matter of law); *Layman v. Braunschweigische Maschinenbauanstalt, Inc.,* 343 N.W.2d 334 (N.D.1983) (in case in which negligence of company supervising construction of plant was followed by alleged negligence of company operating plant before completion of construction the court found the lower court's factual findings on foreseeability and causation were not clearly erroneous); *Steckler v. Miller & Holmes, Inc.,* 303 N.W.2d 560 (N.D. 1981) (in case in which alleged negligence of fuel tanker company in overflowing gas station's storage tank was combined with gas station's negligence in maintaining cap measuring port of storage tank the court rejected the claim the fuel tanker company's actions were an intervening cause because of the disputed factual basis underlying the issue); *Brauer v. James J. Igoe & Sons Constr., Inc.,* 186 N.W.2d 459 (N.D. 1971) (in case in which utility company was allegedly negligent in determining placement of gas line and in efforts to notify contractor of location of gas line and where

road construction contractor snagged line the court affirmed a jury verdict for the plaintiff who was injured by subsequent gas explosion, stating the issue of intervening cause was properly for jury determination because the evidence was such the jury could have reasonably found the intervening negligence to be foreseeable); *Wolff v. Light,* 156 N.W.2d 175 (N.D.1968) (in case in which defendant's negligence in driving automobile through plate glass window was followed by plaintiff police officer's attempt to knock down hanging broken glass pieces, ultimately resulting in injury to the police officer, the court reversed the entry of summary judgment in favor of the defendant, stating: "whether the conduct of the plaintiff was a sufficient intervening cause ... should be left to the jury" and "[w]hether the defendant should have foreseen the probable consequences of his negligent act ... is for a determination of the jury"); *Vick v. Fanning,* 129 N.W.2d 268 (N.D.1964) (in case in which plaintiff negligently operated defective truck hoist in the manner he was negligently instructed the court rejected the contention a jury verdict in favor of the plaintiff should be set aside on the basis of the alleged intervening cause of plaintiff's own actions, stating the issue as "[c]ould reasonable men have drawn these conclusions from the evidence in this case"); *Chicago, M., St. P. & Pac. Ry. Co. v. Johnston's Fuel Liners, Inc.,* 122 N.W.2d 140 (N.D.1963) (in case involving question of whether acts of bulk fuel storage company or fuel tanker company constituted intervening cause of fire the court stated since "the evidence was such that reasonable minds could differ, the case properly was one for the jury to decide"); *Gravseth v. Farmers Union Oil Co.,* 108 N.W.2d 785 (N.D.1961) (in case in which defendant negligently got his vehicle stuck in roadway and failed to put out warning flares behind vehicle and plaintiff subsequently ran into back of defendant's vehicle the court rejected defendant's argument the plaintiff's negligence was, as a matter of law, an intervening and superseding cause of injury and instead held issue was properly for jury); *Olson v. Cass County Elec. Coop.,* 94 N.W.2d 506 (N.D.1959) (in case in which power company negligently maintained a power line and plaintiff was injured after swather he was operating ran into the guy wire of a pole and the power subsequently came into contact with the swather the court rejected an argument the plaintiff's conduct was an intervening cause of the accident, instead after examining all of the particular circumstances involved in the case held the issue to be properly one of fact for determination by the jury); *State v. Columbus Hall Ass'n,* 75 N.D. 275, 27 N.W.2d 664 (1947) (in case in which negligence of property owner in locating coal shute opening near area where tenants could walk and in failing to properly maintain coal shute was followed by an unknown third party's act of opening the coal shute into which the plaintiff fell the court held it was for the jury to determine whether the property owner could have reasonably foreseen someone might negligently or maliciously remove the coal shute lid and leave the hole an open pitfall); *Boss v. Northern Pac. Ry. Co.,* 2 N.D. 128, 49 N.W. 655 (1891) (in case in which railroad company negligently designed, installed and maintained switch arm which struck plaintiff while he was riding on lower step of caboose because of being forced down to that step by fellow riders the court rejected the argument that since the facts were undisputed the issue of whether the other riders' conduct was an intervening and superseding cause was properly a matter of law, stating: "[t]he action of the court in refusing to take the question of proximate cause from the jury was entirely correct"); *Gram v. Northern Pac. Ry. Co.,* 1 N.D. 252, 46

N.W. 972 (1890) (in case in which railroad company started prairie fire and wind switched causing the fire to go onto plaintiff's property the court rejected the argument the wind switch was an intervening cause, stating it "was a matter of pure fact for the jury to decide" and "[t]he question was one about which intelligent men might reasonably and honestly differ, and therefore the trial court very properly declined to invade the province of the jury").

[¶ 38] In contrast to this veritable mountain of cases, with all their variable fact situations, this Court has only on the most limited of occasions held an intervening cause exists as a matter of law. I am able to find only three decisions in North Dakota which create broad categories in which intervening causation is treated as a matter of law.[5] *McLean v. Kirby Co.*, 490 N.W.2d 229 (N.D.1992); *First Trust Co. v. Scheels Hardware & Sports Shop, Inc.*, 429 N.W.2d 5 (N.D.1988); and *Polucha v. Landes*, 60 N.D. 159, 233 N.W. 264 (1930).

[¶ 39] Both *McLean* and *First Trust Co.* involve underlying torts which include foreseeability of the kind of future harm that came to pass as an element of the torts themselves. For example, in *McLean* the underlying tortious conduct of the defendant was the negligent failure to properly conduct a background check and screen a door-to-door salesman who later assaulted the plaintiff. *McLean*, 490 N.W.2d at 232. This Court found the in-

herent nature of the action precluded the application of superseding intervening cause. *Id.* at 242. The Court reasoned that in finding the existence of the tort the fact-finder had, by definition, already determined the latter injury-causing conduct was foreseeable. *Id.* (quoting *Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 915–16 (Minn.1983)). Thus, for that entire type of claim, the subsequent assaultive acts of a negligently-screened salesman could not, as a matter of law, serve as an intervening cause.

[¶ 40] Similarly, in *First Trust Co.* the underlying tortious conduct was negligent entrustment of a dangerous weapon. *First Trust Co.*, 429 N.W.2d at 7. Quoting Prosser & Keeton, this Court stated: "Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence." *Id.* at 9 (quoting *Prosser & Keeton on Torts*, ch. 7, pp. 303–04 (5th ed.1984)). Thus, this Court stated upon remand the jury "should be further instructed that if there is negligent entrustment by the defendant Scheels Hardware & Sports Shop, Inc., a foreseeable misuse of the chattel by the person to whom it is entrusted cannot be a superseding cause...." *First Trust Co.*, 429 N.W.2d at 9.

[¶ 41] The only other case which creates such a broad form category in which intervening cause is determined as a mat-

---

**5.** This Court has described its decision in *Moum v. Maercklein*, 201 N.W.2d 399 (N.D. 1972) as one in which intervening causation was properly decided as a matter of law. *Stewart v. Ryan*, 520 N.W.2d 39, 48 (N.D. 1994) (citing *Moum* for the proposition some acts are so unforeseeable and independent they are, as a matter of law, not the legal cause of harm). In *Moum*, however, this Court engaged in a review of the facts adduced at trial to determine if reasonable minds could differ on whether alleged intervening cause was reasonably foreseeable and

came to the conclusion that reasonable minds could not differ. *Moum*, 201 N.W.2d at 404. This Court merely held the evidence adduced at the trial in that particular case was insufficient to support the finding of fact made by the jury. This Court in *Moum* did not, unlike the three cases cited above, create a general rule that, henceforth, in a broad category of cases there no longer need be a factual analysis of whether a subsequent act was foreseeable in order to determine the existence of intervening causation.

ter of law, and not as a matter of fact, is *Polucha*. Unlike, these negligent entrustment/failure to screen cases, however, the original underlying tortious conduct in *Polucha* does not carry with it an element of foreseeability. Instead of looking back to the action of the original tortfeasor, the Court looked forward to the conduct of the intervening party and made a sweeping generalization which in my mind is not now warranted, if it ever was. In order to understand this, a more detailed analysis of *Polucha* is warranted.

[¶ 42] In *Polucha* the plaintiff, Szymon Polucha, fractured his ankle while working in a mine. *Polucha*, 233 N.W. at 265. Mr. Polucha received compensation for his initial injuries from the Workmen's Compensation Board. *Id.* A little over a year after receiving his workmen's compensation award, Mr. Polucha commenced an action against his doctor, alleging medical malpractice in the diagnosis and treatment of, and operation for, his ankle injury. *Id.* The defendant doctor asserted Mr. Polucha had no viable claim because any such claim was "by operation of law assigned to the compensation bureau which has become subrogated to any rights" Mr. Polucha might have had against him. *Id.* The trial court excluded much of the proof offered in support of this defense and the jury returned a verdict in favor of Mr. Polucha, upon which a judgment was entered. *Id.* at 266. This Court reversed, finding Mr. Polucha, by receiving the workmen's compensation award, passed any cause action against the doctor to the Board. *Id.* at 270. This Court thus ordered the case be dismissed. *Id.* at 271.

[¶ 43] In so holding, this Court analyzed the issue along lines of causation. *Id.* at 266. If the subsequent medical malpractice were considered an independent intervening cause then the Workmen's Compensation Board would not be subro-

gated and Mr. Polucha would be entitled to his claim for damages. *Id.* If, on the other hand, the subsequent medical malpractice were not an independent intervening cause then Mr. Polucha would be entitled to bring the claim, as the Board would not have had the claim assigned to it by operation of law. In making its determination this Court referred to what it believed were general principles of common law, stating: "There is no reason why one rule of causation should be applied in negligence cases at common law and another rule in compensation cases." *Id.* at 267. The specific ruling of the Court on this point was stated as follows:

> At common law one liable to respond in damages, as employers frequently were for personal injuries sustained by employees, is held liable in damages for the injury, including any aggravation thereof due to the mistake of the physician or surgeon selected by the injured person in the exercise of due care for the purpose of treating the injuries and thus minimizing the damages. The aggravation in such cases is not deemed to be the fault of the injured person, but *is regarded in law* as a consequence of the original fault of the defendant. It is, therefore, not such an independent, intervening act of a third party as to break the chain of causation between the primary injury and the ultimate consequence or result.

*Id.* at 266 (emphasis added). In support of this ruling, the Court cited several cases from other jurisdictions and one North Dakota decision. *See Pyke v. City of Jamestown*, 15 N.D. 157, 107 N.W. 359 (1906).

[¶ 44] While the cases from the other jurisdictions may have supported the proposition that subsequent malpractice may be categorically considered intervening causation (therefore negating the need for

any factual analysis of foreseeability), the decision in *Pyke* did not. In *Pyke* the plaintiff had been injured after falling on a defective city sidewalk. *Id.* at 359. The jury found in the plaintiff's favor. *Id.* The City of Jamestown appealed, claiming it was error for the trial court to refuse to hold, as a matter of law, that the cause of the injury was the intervening act of the plaintiff's own negligence. *Id.* at 363. This Court restated the general rule that questions of causation are generally ones of fact for the jury. *Id.* More importantly, this Court ruled that "[u]nder the circumstances, it cannot be said that but one conclusion can be drawn. The jury found that she exercised reasonable care, and we cannot say, upon the facts above stated, that there is no basis for that conclusion." *Id.* Thus, not only did *Pyke* not state the broad rule for which it was cited but the actual ruling in the case was that based upon the facts presented the issue of causation was properly one of fact for the jury. The broad generalization of the state of the common law made in *Polucha* does not seem to be warranted by the announced decisions of this Court prior to *Polucha.*

[¶ 45] In the *McLean* and *First Trust Co.* decisions an understandable rationale was enunciated for the rule that in those categories of torts (negligent entrustment and negligent screening) subsequent acts were not intervening causal acts. The rationale is those torts contain foreseeability of the future wrongful act as an element inherent in the tort. By finding liability under the tort, the jury has already found foreseeability of the future harm. It would be logically inconsistent, and therefore legally impossible, to find both that the tort existed and that the future harm was not reasonably foreseeable. As a matter of law the subsequent act cannot be an intervening cause. No such rationale is set forth in *Polucha.* Instead, in *Polucha*

a categorical rule is simply pronounced. Instead of an articulated rationale, the *Polucha* rule substitutes an assumption I am not willing to make. This assumption is that in all cases it is probable a doctor will commit negligence.

[¶ 46] As set forth above, the crucial issue in determining whether an act subsequent to the initial wrongdoing is an intervening cause is whether the act is foreseeable. This Court described this standard in *State v. Columbus Hall Ass'n* as whether the subsequent act is "one which might be normally expected by a reasonable person in view of the situation existing at the time of its intervention." *State v. Columbus Hall Ass'n,* 27 N.W.2d at 668. In *Moum,* this Court similarly described the standard as follows:

> Thus a party is not chargeable with all possible consequences of his negligent act, and he is not responsible for a consequence which is possible according to occasional experiences. His is liable only for the consequences which are probable according to the ordinary, usual experiences of mankind.

*Moum,* 201 N.W.2d at 403. Therefore, the improper, implicit assumption in *Polucha* is it is probable, as a matter of law, doctors commit malpractice. I do not believe this sweeping generalization is any more warranted for professional negligence than it is for regular negligence. For example, I do not believe it is inherently any more foreseeable a physician will commit malpractice, *see Polucha,* 60 N.D. 159, 233 N.W. 264, than it is a suspect fleeing the police at a high rate of speed and driving erratically will be involved in an accident, *see Jones,* 489 N.W.2d 576, or than it is the wind might switch on the prairies of North Dakota, *see Gram,* 1 N.D. 252, 46 N.W. 972. Certainly such an assumption of foreseeability was not made for any of the various factual situations set forth in the

litany of prior North Dakota cases in which this Court allowed the jury to determine that issue. Like almost every type of case in North Dakota (excluding the negligent entrustment/screening type of cases), I believe the issue of intervening cause is one properly for the finder of fact, dependent upon the circumstances of the case. To the extent *Polucha* holds to the contrary, I believe it is a vestigial remnant of an earlier day, and should now be totally excised from the body of the law.

[¶ 47] Further, the sole stated reason this Court gave in *Polucha* for adopting the rule that medical malpractice is as a matter of law foreseeable, and thus not an intervening cause, is no longer extant. The Court in *Polucha* stated the reason to adopt this rule in the workers compensation area was because that same rule allegedly applied in regular negligence cases. *Polucha*, 233 N.W. at 267. Since *Polucha* was decided, however, the general rule in negligence cases has changed 180 degrees. *See Haff v. Hettich*, 1999 ND 94, 593 N.W.2d 383.

[¶ 48] As this Court explained in *Haff*, when the legislature adopted comparative fault in North Dakota it effectively overruled the *Polucha* rule that an original tortfeasor is responsible for subsequent malpractice as a matter of law in the general law. *Haff*, 1999 ND 94, ¶ 18, 593 N.W.2d 383. This Court stated:

> We decline to construe the "[l]egal requirements of causal relation" in N.D.C.C. § 32–03.2–01 to impose liability on an original tortfeasor for an intervening cause like medical malpractice that the original tortfeasor was deemed to foresee under common law, because that interpretation would render meaningless the language for determining the percentage of fault and damages attributable to each person and for allocating several liability to each party for the amount of damages attributable to the percentage of fault of that party.

*Id.* There is no longer operative any general common law rule that subsequent malpractice of a physician is, as a matter of law, foreseeable and hence, not an independent cause. If anything, the interests of consistency now favor abandonment of the outdated *Polucha* rule in workers compensation cases.

[¶ 49] A broad reading of the changes enunciated in *Haff*, combined with the rather vague standard set forth in Section 65–01–02(10)(b)(8) (which simply incorporates general standards of causation into the workers compensation arena), could support the conclusion *Polucha* has already been totally abandoned by this Court, even in the workers compensation setting. However, to the extent this Court has not expressly recognized the broad categorical rule in *Polucha* is no longer good law in workers compensation cases, I believe it should expressly now so state. While I doubt the propriety of the *Polucha* rule since its very inception, I do not doubt that at least since the *Haff* decision was rendered the rule in *Polucha* has simply not been good law. Any reliance upon *Polucha* by either the Agency or the majority is, in my view, error. Therefore, when the Agency concluded as a matter of law that subsequent acts of malpractice were compensable injuries, it did so in a manner not in accord with the law of North Dakota. This error impermissibly tainted its decision WSI had a subrogation interest in the proceeds of Haugenoe's legal malpractice settlement. This error warrants reversal. For this reason I can concur only with the result reached by the majority.

[¶ 50] STEVEN E. McCULLOUGH, D.J.

SANDSTROM, Justice, dissenting.

[¶ 51] I respectfully dissent. The Workforce Safety and Insurance order is consistent with the statute.

[¶ 52] Workforce Safety and Insurance paid nearly a quarter of a million dollars in benefits for Haugenoe, including the costs incurred because of the medical malpractice. The legal malpractice recovery represents what should have been recovered in the medical malpractice action. WSI seeks fifty percent of the legal malpractice recovery, reduced by attorney's fees and its share of expenses.

[¶ 53] Although some states allow subrogation of legal malpractice claims arising out of medical malpractice in connection with a compensable workplace injury, and some states do not allow such subrogation, the determination usually turns on the wording of the state statute. *See In Re Worker's Compensation Lien,* 231 Mich. App. 556, 591 N.W.2d 221, 224 (1998); *Virginia Municipal Group Self–Insurance Ass'n,* 66 Va. Cir. 236, 2004 WL 3132010 (Va.Cir.Ct. Nov. 24, 2004). In North Dakota, our statute supports subrogation:

> When an injury or death for which compensation is payable under provisions of this title shall have been sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto, the injured employee, or the employee's dependents may claim compensation under this title and proceed at law to recover damages against such other person. The fund is subrogated to the rights of the injured employee or the employee's dependents to the extent of fifty percent of the damages recovered up to a maximum of the total amount it has paid or would otherwise pay in the future in compensation and benefits for the injured employee. The organization's subrogation interest may not be reduced by settlement, compromise, or judgment.

N.D.C.C. § 65–01–09 (1999).

[¶ 54] There was "an injury" caused by the malpractice in treating the original workplace injury, for which compensation was payable and paid by WSI. It was under circumstances which created in some person other than WSI "a legal liability to pay damages in respect thereto." The circumstances of this case, legal malpractice, created in the lawyer a duty to pay damages "in respect" to the damages caused by the medical malpractice in treating the claimant's injuries.

[¶ 55] North Dakota's worker's compensation agency has had subrogation rights since the worker's compensation fund was established in 1919. *State v. Clary,* 389 N.W.2d 347, 348 (N.D.1986). The purpose of those subrogation rights "is to reimburse the fund, to the extent possible, at the expense of the persons at fault." *Blaskowski v. North Dakota Workmen's Compensation Bureau,* 380 N.W.2d 333, 335 (N.D.1986). Under the concept of subrogation, WSI "stands in the shoes" of the claimant for any recovery. *See Ness v. St. Aloisius Hospital,* 313 N.W.2d 781, 783 (N.D.1981). In this case, there was no dispute that as a result of the alleged medical malpractice, WSI paid additional benefits to the claimant. The legal malpractice precluded recovery on the medical malpractice, and the legal malpractice recovery was "with respect to" the medical malpractice.

[¶ 56] Haugenoe's legal malpractice claim is directly derived from the medical malpractice claim against the doctor. I would affirm the district court judgment affirming the order of WSI.

[¶ 57] DALE V. SANDSTROM